837 F.2d 775
 56 USLW 2484, Fed. Sec. L. Rep. P 93,610
 FIRST INTERSTATE BANK OF NEVADA, N.A., as administrator of
the estate of Johanna W. Nelson, and
representative of a bondholder class,
Plaintiff- Appellant,
and
Harold Olshansky, et al., Proposed Intervening Plaintiffs-Appellants,
v.
CHAPMAN & CUTLER, Defendant-Appellee.
 No. 86-2613.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 8, 1987.
Decided Jan. 19, 1988.
 
 R. Alan Stotsenburg, R. Alan Stotsenburg, P.C., New York City, for plaintiff-appellant.
 John T. Hickey, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.
 Before WOOD, COFFEY, and RIPPLE, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Johanna W. Nelson filed suit against the law firm of Chapman and Cutler, alleging that it had violated state and federal securities laws as well as federal racketeering laws in connection with several public bond offerings. Ms. Nelson died during the course of the litigation below and Judge Hart permitted the substitution of First Interstate Bank of Nevada, the executor of Ms. Nelson's estate, as the named plaintiff. The Bank sought certification of the action as a class action; certification was denied for lack of a proper class representative and the district court dismissed the complaint for failure to state a claim. Following dismissal, several other proposed class representatives sought to intervene in order to represent the class. Intervention was denied. The Bank, joined by the proposed intervenors, now appeals.[1] We affirm.
 
 A.
 
 2
 For purposes of evaluating a dismissal for failure to state a claim, we assume that the well-pleaded allegations of the complaint are true. A complaint may be dismissed for failure to state a claim only if the plaintiff can prove no set of facts upon which relief may be granted. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Meriwether v. Faulkner, 821 F.2d 408, 411 (7th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). We reject at the outset the Bank's contention that Chapman and Cutler's motion to dismiss was converted by operation of law to one for summary judgment by the consideration of matters outside the pleadings. See Fed.R.Civ.P. 12(b)(6). The Bank fails to point to any matters outside the pleadings that the district court considered with respect to the dismissal for failure to state a claim. The Bank's sole contention is that the district court considered matters outside the pleadings when it ruled on a preliminary statute of limitations challenge almost one year earlier. The Bank has not shown that the court considered matters outside the pleadings in its dismissal on the merits.
 
 1. The Complaint
 
 3
 The allegations of the complaint set out the following sequence of events. In the spring of 1973, Cornelius Pitt requested that Chapman and Cutler act as bond counsel in connection with a proposed public bond offering, McCormick A, to finance the construction of a nursing home. Chapman and Cutler eventually declined to act as bond counsel on the issue and advised Pitt that the proposed bonds would have to be registered with the Securities and Exchange Commission, meaning they would not be eligible for tax-exempt status, in part because of concerns about the not-for-profit status of the issuing corporation, McCormick Health Centers, Inc.
 
 
 4
 Later, in July 1975, Chapman and Cutler, in its role as bond counsel to the Cook County Board, issued a legal opinion to the Board in connection with the McCormick A bond issue. The opinion related to the bonds' tax-exempt status. The Cook County Board required such an opinion prior to adopting a resolution approving of the bond issue and accepting the nursing home as a gift from the issuer of the bonds. The resolution was necessary in order for the bonds to be tax-exempt. Chapman and Cutler's opinion was stated hypothetically: assuming certain facts, Chapman and Cutler gave its opinion that the bond issue would be tax-exempt. As it turned out, however, some of the "assumed facts" were not consistent with the actual facts Chapman and Cutler had learned earlier. The Board adopted the necessary resolution and the McCormick A bonds were issued.
 
 
 5
 The basis of the complaint therefore is that Chapman and Cutler, at the time it issued its opinion to the Cook County Board in 1975, knew, based on information it had received and conclusions it had arrived at in 1973, that the issuing corporation had not complied with the requirements necessary in order to achieve status as a not-for-profit corporation. Thus the assumption on which the opinion was based (which depended on whether the corporation qualified as a not-for-profit corporation), was false.[2]
 
 
 6
 The McCormick A bonds were fully refunded. The money used to refund the McCormick A bonds came from later bond issues: McCormick B, McCormick C, Domicile A, and Domicile B. The Bank refers to this as a classic Ponzi scheme, meaning that the later revenues were diverted from their stated purposes and used to pay off the McCormick A bond issue. Chapman and Cutler issued legal opinions similar to the one issued for McCormick A bonds on two of the other bond issues, Domicile A in June 1977 and Domicile B in May 1979. The Domicile A opinion was addressed to the president and board of trustees of the Village of Glenview, while the Domicile B legal opinion was again addressed to the Cook County Board. Again, the opinions were based on an assumption concerning the bond issue's tax-exempt status which, the complaint alleges, Chapman and Cutler either knew to be false or recklessly assumed to be true.
 
 
 7
 The bond issuers became bankrupt. Only the McCormick A issue was ever refunded. The remaining bond issues, McCormick B, McCormick C, Domicile A, and Domicile B, defaulted. The amount defaulted on the remaining bond issues exceeds twelve million dollars. Ms. Nelson, the original plaintiff, had purchased one McCormick B bond.
 
 2. Prior Proceedings
 
 8
 Ms. Nelson initially filed suit on behalf of herself and as representative of a class whose members were the purchasers of bonds from all four of the defaulted bond issues against the underwriters, promoters, bond counsel, controlling persons, and others in November 1980 before Judge Plunkett. Chapman and Cutler was not a defendant in that suit. The parties subsequently stipulated that Ms. Nelson was a proper class representative. During discovery in that case she learned of Chapman and Cutler's involvement in the transactions, including the facts surrounding Chapman and Cutler's declining to act as bond counsel in 1973. After Judge Plunkett denied her motion to add Chapman and Cutler as a defendant in that case, this lawsuit was filed.
 
 B.
 1. Count I
 
 9
 Count I forms the heart of the complaint. The Bank alleged that Chapman and Cutler, by issuing its legal opinions to the municipalities, aided and abetted violations of or conspired to violate the federal securities laws, specifically Sec. 10(b) of the Securities Exchange Act of 1934, Rule 10b-5, and Sec. 17(a) of the Exchange Act of 1933. The district court rejected the Bank's claim, holding that the complaint merely alleged that Chapman and Cutler's actions were a "but-for" cause of the McCormick B bond issue which she had purchased.
 
 
 10
 All plaintiff alleges is that the McCormick B issue would never have taken place but for the McCormick A issue (and its near default), and the McCormick A issue would never have taken place but for Chapman & Cutler's failure to reveal the real facts that destroyed the tax exempt status of the bonds.
 
 
 11
 Mem. Op. of June 19, 1986 at 8. The court relied on Judge Plunkett's reasoning in an opinion rendered in the first class action as well as Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 61-62 (2d Cir.1985). The district court rejected the Bank's argument that Chapman and Cutler's involvement in the Domicile A and B bond issues was in any way relevant, noting "causation does not (in law anyway) run backwards in time." The court also summarily rejected plaintiff's conspiracy allegations. On reconsideration, the court acknowledged that the Domicile A bonds, for which Chapman and Cutler had given an opinion to the Village of Glenview, were issued before, not after, plaintiff's McCormick B bond. Nonetheless, it found that plaintiff had merely shown "that it had another 'but-for' cause for the collapse of McCormick B, and that is still insufficient." Mem. Op. of September 4, 1986 at 2. The court also pointed to this Circuit's then-recent decision in Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490 (7th Cir.1986), as an additional reason for affirming the dismissal. The court quoted our language in Barker to the effect that when the alleged securities law violation is "a failure to 'blow the whistle,' the defendant must have a duty to blow the whistle." Id. at 496 (emphasis supplied), quoted in Mem. Op. of September 4, 1986 at 2.
 
 
 12
 On appeal the Bank first argues that the court misread Judge Plunkett's opinion in the first class action and the holding of Bloor. We disagree. In the main case, Judge Plunkett dismissed the complaint against two lawyers who allegedly made false statements only with respect to the McCormick A issue, reasoning that the misapplication of the proceeds of the later bond issues was a superseding event. It was the misuse of those proceeds to refund the McCormick A issue which allegedly caused the plaintiff's injury; the two lawyers had been involved only with the McCormick A issue, not the later, defaulted bond issues. Judge Plunkett thus rejected the notion that the subsequent bond issues were the inevitable result of the defendants' need to acquire funds to avoid defaulting on the McCormick A issue. This reasoning is applicable here. The misuse of the McCormick B bond proceeds can in no way be said to be the inevitable result of Chapman and Cutler's prior allegedly false opinions regarding the tax-exempt status of the McCormick A and Domicile A bond issues.
 
 
 13
 At best the complaint alleges that but for Chapman and Cutler's false opinion concerning McCormick A, the McCormick B issue, the proceeds from which were misused to refund McCormick A, would never have taken place.[3] The Bank argues that the district court misread Bloor "as holding that participants in a securities offering cannot be liable to purchasers for diversion of proceeds in connection with the offering." We disagree. The district court merely relied on the Second Circuit's opinion in holding that but-for causation is not sufficient to state an aiding and abetting claim. Mem. Op. of June 19, 1986 at 8 (citing Bloor, 754 F.2d at 61-62). We agree that something more than but-for causation is required. See Bloor, 754 F.2d at 61-62 ("required causal connection may not be supplied by 'but for' allegations"); see also Metge v. Baehler, 762 F.2d 621, 624 (8th Cir.1985) ("[A]ppellants had the burden of showing that the secondary party proximately caused the violation. In approving this standard, we rely on decisions in other courts that have required a showing of 'substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff' ... [or] that 'the encouragement or assistance is a substantial factor in causing the resulting tort.' ") (citations omitted), cert. denied, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986); Marbury Management, Inc. v. Kohn, 629 F.2d 705, 717 (2d Cir.) (Meskill, J., dissenting) ("the injury averred must proceed directly from the wrong alleged and must not be attributable to some supervening cause"), cert. denied, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); Edwards & Hanly v. Wells Fargo Securities, 602 F.2d 478, 484 (2d Cir.1979), cert. denied, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); Landy v. FDIC, 486 F.2d 139, 163-64 (3d Cir.1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540, 546 (2d Cir.1967) ("corporate abuse and diversion" claims are not cognizable under securities laws; causal connection between any relevant acts and any damage suffered by plaintiffs "is slim indeed").
 
 
 14
 The Bank suggests that the Eleventh Circuit accepted as sufficient allegations amounting only to but-for causation in Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004 (11th Cir.1985). We do not so read Woods. To the contrary, the Eleventh Circuit rejected the defendant's argument that the district court had applied a but-for causation test in finding the defendant liable. The court held that the defendant's act "was a causal factor in the perpetration of the fraud and in the cumulation of the investors' losses"; the defendant's action had "sealed the fate of the investors' money." Id. at 1013. The causal connection between the defendant's action and the investors' losses therefore was more substantial than mere but-for causation.
 
 
 15
 The Bank contends that the complaint alleges that the issuance of the McCormick B bonds, which were issued to refund the McCormick A issue, was a foreseeable result of the McCormick A bond issuance. (Apparently no legal opinion to the Cook County Board was required in order to issue the McCormick B bonds.) This argument overlooks the causation problem. While the issuance of the McCormick B bonds might well be a foreseeable result of the McCormick A issue, the misuse of the McCormick B bond proceeds was not. This misuse of the proceeds thus constitutes a superseding event, and is the actual cause of the plaintiff's injury.[4]
 
 
 16
 Judge Hart correctly recognized that the causation problems faced by the Bank could be alleviated by allegations that Chapman and Cutler took part in an overall conspiracy to defraud the bond investors; indeed, the Bank, in much of its brief on appeal, treats the four bond issues as part of one large scheme to defraud. Cf. Barker, 797 F.2d at 496 (noting failure of courts to distinguish between aiding and abetting and conspiracy claims). However, Judge Hart rejected the Bank's argument that it had connected Chapman and Cutler with the McCormick B bond issue by alleging the firm's involvement with a conspiracy. The Bank contends that its allegations of conspiracy were sufficient. At oral argument counsel called our attention to paragraphs 13 and 15 of the complaint as containing the requisite allegations. Paragraph 13 of the complaint states that "defendants, or conspirators, acting singly and in concert, engaged in a fraudulent common plan, scheme, conspiracy or course of conduct of which an essential element was the sale by deception of bonds to members of the investing public." Paragraph 15 states that the complaint's allegations
 
 
 17
 of a common plan, scheme, conspiracy and course of conduct, as well as specific acts, non-disclosures, schemes, practices or courses of business mean that, unless the context requires otherwise, such activities were done by one or more of the conspirators or defendant Chapman & Cutler as directors, officers, partners, employees or agents of the defendant corporations, partnerships or governmental agencies....
 
 
 18
 We agree with the district court that notwithstanding these allegations "nothing in the complaint suggests that Chapman & Cutler agreed to a scheme that contemplated a series of fraudulent bond issues." Mem. Op. of June 19, 1986 at 9. "To state a claim for conspiracy, a plaintiff must allege the agreement of each defendant to the operation of the conspiracy." Otto v. Variable Annuity Life Insurance Co., 814 F.2d 1127, 1137 (7th Cir.1986), petition for cert. filed, 56 U.S.L.W. 3322 (U.S. Oct. 13, 1987) (No. 87-600). In this regard, we consider insufficient the allegations contained in the complaint regarding Chapman and Cutler's actions. The complaint is barren of any allegations that Chapman and Cutler actually agreed to a scheme to defraud bond investors or facts from which such agreement could be reasonably inferred. Conclusory assertions that Chapman and Cutler was "engaged in a fraudulent common plan" are simply not enough.[5] Dismissal of a complaint containing only conclusory, vague, and general allegations of conspiracy is proper. Id.
 
 2. Count II
 
 19
 Count II of the complaint alleges that Chapman and Cutler's conduct also violated the Illinois Securities Law, Ill.Rev.Stat. ch. 121 1/2, p 137.12. The district court held that count II failed to state a claim for the same reasons as count I because Illinois securities laws are interpreted in the same way as the federal securities laws. The court also noted that Judge Plunkett, in the first action, had already held that the plaintiff must tender the bonds prior to obtaining any recovery under Illinois law, and that the plaintiff had conceded Judge Plunkett's ruling required dismissal of count II of the instant complaint. Mem. Op. of June 19, 1986 at 10; see also Order of July 12, 1987 (ruling on statute of limitations question, noting plaintiff's concession). Chapman and Cutler, in its reply memorandum on the motion to dismiss, also noted plaintiff's concession, citing plaintiff's memorandum in opposition to the motion to dismiss at pages 15-16, a copy of which is contained in its supplemental appendix on appeal. In its brief on appeal the Bank ignores the effect of the concession; however, by conceding the issue below, it failed to present it to the district court and has thus waived it for purposes of this appeal. Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 268-69 (7th Cir.1986).
 
 C.
 
 20
 The district court denied the motion for class certification. The court grounded its denial on the fact that the Bank, now substituted for Ms. Nelson, was not a proper class representative. The district court reasoned that under Nevada law, the Bank, as administrator of Ms. Nelson's estate, had the power to act only for the benefit of the creditors and beneficiaries of the estate, to whom it owed a fiduciary duty. As class representative, the Bank would be assuming obligations to the class, including the obligation to spend estate assets to pay the costs of the representation. Given this inherent conflict between an administrator's duty to act for the benefit of beneficiaries and creditors of the estate and the class representative's duty to act for all the class members, the court concluded that the Bank was not a proper class representative.
 
 
 21
 The decision whether to certify a class is within the sound discretion of the district court and may be reversed only if the court abuses its discretion. Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir.1986) (en banc); United Independent Flight Officers v. United Air Lines, Inc., 756 F.2d 1274, 1283 (7th Cir.1985). The plaintiff carries the burden of showing that it will fairly and adequately represent the class. Id. at 1284. We agree with the district court that plaintiff has not met that burden here, thus we find that the court did not abuse its discretion in declining to certify the class.
 
 
 22
 Neither party disputes that Nevada law authorizes an executor to sue on behalf of the estate. See Nev.Rev.Stat. Sec. 143.060. The district court was quite properly concerned with the authority of the executor to sue on behalf of the class as well as the estate, keeping in mind the conflicting duties which would be owed to each. Cf. Fitzsimmons, 805 F.2d 682, 697-98; United Independent Flight Officers, 756 F.2d at 1284. On appeal, the Bank asserts that all of the estate's beneficiaries (and presumably creditors, if any remain, although this is not clear) consent to the Bank's acting on behalf of the class. We have found no evidence of that consent in the record. Indeed, the estate was closed on April 14, 1986, four months before Judge Hart ruled on the motion to dismiss.[6] The Bank submitted a copy of a petition filed with the Nevada court that mentions both lawsuits and states that the Bank will be substituted for Ms. Nelson; nonetheless, as the district court stated when denying the Bank's motion to reconsider, the Bank has not presented any order in which the probate court specifically approves of the Bank's pursuit of the class action. The court gave the Bank notice that the copy of the petition provided was insufficient, yet the Bank took no steps to demonstrate that it would be a proper representative. Moreover, even in the face of Judge Hart's ruling on the motion to dismiss, in its motion for reconsideration the Bank failed to establish that all the estate's beneficiaries had agreed to its representation of the class. Finally, the Bank's suggestion that Judge Hart was somehow bound by the fact that the class was certified in the case before Judge Plunkett overlooks the fact that the parties there stipulated to class certification. The district court's decision not to certify the class was well within its discretion.
 
 D.
 
 23
 Following the district court's ruling on the issue of class certification, the Bank filed a motion to reconsider or in the alternative to permit others, persons who had made purchases from each of the bond issues, to intervene. The district court denied the motion. The denial was based on the following three factors: (1) the fact that plaintiff had been on notice that additional parties might be required; (2) the fact that a new lawsuit had been filed by the proposed intervenors; and (3) the court's finding that notice to the class is not a proper device to solicit claims. Mem. Op. of Sept. 4, 1986 at 3. Like the district court's decision whether or not to certify the class, "[p]ermissive intervention is wholly discretionary with the district court and will be reversed on appeal only for an abuse of discretion." United States v. 36.96 Acres of Land, 754 F.2d 855, 860 (7th Cir.1985) (citing EEOC v. United Air Lines, Inc., 515 F.2d 946, 949 (7th Cir.1975)), cert. denied, 476 U.S. 1108, 106 S.Ct. 1956, 90 L.Ed.2d 364 (1986).
 
 
 24
 On appeal, the Bank has not persuaded us that Judge Hart abused his discretion. The plaintiff in this case was involuntarily eliminated from the suit before the court made any determination on the merits of the class claims, thus distinguishing this case from Romasanta v. United Airlines, Inc., 537 F.2d 915 (7th Cir.1976), aff'd sub. nom, United States v. McDonald, 432 U.S. 385, 97 S.Ct. 2464, 52 L.Ed.2d 423 (1977), where the plaintiffs abandoned the suit at a point where it had gone far enough to affect the rights of other class members. Cf. Wakeen v. Hoffman House, Inc., 724 F.2d 1238 (7th Cir.1983) (alternative holding: distinguishing Romasanta ). We find no abuse of discretion in the court's denial of intervention.
 
 E.
 
 25
 In conclusion, we hold that the district court's dismissal of the complaint was proper. Denial of the motions for class certification and intervention were within the court's discretion. The judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 We refer to the appellants collectively as "the Bank."
 
 
 [2]
 At the same time, however, we note the complaint also alleges that George Pitt (the son of Cornelius Pitt) had fraudulently obtained a favorable ruling from the Internal Revenue Service on the issuing corporation's not-for-profit status, which, as we have said, is a prerequisite to compliance with the tax exemption requirements. The complaint also alleges that Chapman and Cutler had requested and received (and apparently relied on) a copy of the corporation's application for not-for-profit status, which had been approved by the IRS
 
 
 [3]
 Chapman and Cutler's involvement in the Domicile A issue is irrelevant to the chain of causation as it relates to McCormick B; the complaint alleges no connection between the Domicile A issue and the misuse of the McCormick B proceeds apart from the fact that the proceeds were commingled
 
 
 [4]
 Our recent opinion in Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490 (7th Cir.1986), did not address the issue of but-for causation. There, we upheld the district court's grant of summary judgment in favor of the defendant law and accounting firms because the plaintiffs had not shown the "minimal requirements" of aiding and abetting liability: "scienter and the defendants' commission of a proscribed act." Id. at 496. At issue in Barker was the law firm's failure to "blow the whistle" on its client; for example, the firm's responses to certain questions asked by the trustee may have failed to disclose certain material facts. As we noted, however, "knowledge of a material omission is not enough to violate the act or rule. There must also be a duty to disclose." Id. at 495. We agree with Chapman and Cutler that its allegedly false opinion, based on a purportedly false assumption, is analogous to the alleged failure to disclose material facts at issue in Barker
 
 
 [5]
 Most of the remainder of the complaint refers to "Chapman & Cutler and the conspirators," an unusual way of alleging that Chapman and Cutler was a co-conspirator. In any event, the complaint's factual allegations do not establish any kind of agreement on Chapman and Cutler's part to participate in such a scheme, nor is such an agreement a reasonable inference which may be drawn from the conduct which is alleged
 
 
 [6]
 Chapman and Cutler claims that the closing of the estate prior to Judge Hart's ruling on the motion to dismiss deprives the Bank of the legal capacity to pursue this appeal. However, in a post-argument submission, the Bank has provided us with a copy of an order of the Nevada court, dated April 15, 1987, confirming its authority to act on the estate's behalf