R. Richard BASTIAN, III, et al., Plaintiffs,

v.

PETREN RESOURCES CORPORATION, et al., Defendants.

No. 86 C 2006.

United States District Court, N.D. Illinois, E.D.

March 7, 1988.

Michael H. Moirano, James E. Dahl, Dahl and Moirano, Chicago, Ill., for plaintiffs.

Stephen Novack, Donald A. Tarkington, Mitchell L. Marinello, Novack & Macy, William O'Connor, Zukowski, Rogers, Flood, McArdle and O'Connor, Chicago, Ill., James G. Wiles, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case arises out of the sales of limited partnership interests in two Illinois oil and gas limited partnerships, Petren 1981A and Petren 1981B. Each plaintiff is a limited partner of one or both of these partnerships. The complaint alleges that defendants—the general partners of the partnerships along with their attorneys—violated federal securities laws as well as state statutes and common law, and engaged in a pattern of racketeering activity, through various material non-disclosures they made prior to the sales of the partnership interests. Defendants have moved to dismiss all seven counts of the complaint on the grounds that plaintiffs have failed to state a claim upon which relief may be granted in any of the counts. This court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the motion to dismiss the complaint is granted.

## FACTS

The complaint names corporate defendants, Petren Resources Corporation ("PRC") and Faestel Investments ("FI"), as co-general partners in the limited partnerships, individual defendant David J. Faestel ("Faestel"), as the officer, director and sole shareholder of FI and the Chairman of the Board and principal shareholder of PRC, the law firm McDermott, Will and Emery ("MWE"), as legal representative of Faestel and FI, and Brian S. Hucker, as a lawyer with MWE. According to the complaint, at some time in 1981 MWE and Hucker prepared "Offering Memoranda" for the two limited partnerships in order to solicit and sell partnership interests. The Offering Memoranda described the limited partnerships Petren 1981A and 1981B as oil and gas ventures, identified FI and Petren as co-general partners in the partnerships and named MWE as counsel for the partnerships. It also described Faestel, FI and Petren as "being qualified and experienced in oil and gas ventures," and "purport[ed] to disclose all material information about the limited partnerships, including information about the two general partners and their principals."

Plaintiffs claim that, after receiving and reading the Offering Memoranda, they each decided to, and did invest in one or both of the limited partnerships. They assert, however, that they would not have

invested had the Offering Memoranda not knowingly "failed to disclose the following facts about the qualifications and prior experience of Faestel, FI and Petren:"

(a) That in or about September, 1979, Faestel and [FI] were sued in federal court in Chicago by investors in a previous oil and gas venture they had promoted and had been charged in that lawsuit with violating federal and state securities laws;

(b) That Faestel and [FI] had defaulted in the payment of approximately $1,000,000 in loans they had obtained from the Northern Trust Company in connection with prior oil and gas ventures they had promoted; and

(c) That Petren was established by Faestel and [FI] solely to promote the Petren Oil and Gas Programs and that Petren was, in actuality, nothing more than the alter ego of Faestel and [FI].

The complaint further alleges that MWE and Hucker had represented Faestel and FI in the (non-disclosed) securities litigation and loan transactions, that all of the defendants knew about these problems at the time the Offering Memoranda were prepared and distributed, and that plaintiffs did not know of these problems at the time they purchased their partnership interests. Indeed, according to the complaint, plaintiffs only learned of them when, in 1984, plaintiff Ronald Rotunda became concerned about his investment in Petren 1981B and hired an attorney to investigate the limited partnerships.

Plaintiffs claim that, during the investigation Hucker told Rotunda's attorney that Rotunda was the only limited partner questioning the conduct of Faestel or the general partners, but that, in fact, "at the time Rotunda's attorney was conducting the investigation, there were at least two separate federal actions filed against Faestel and the general partners relating to the Petren Oil and Gas Programs." In any case, plaintiffs allege, by the time Rotunda's attorney had completed his investiga-

tion, "plaintiffs' investments in the Petren Oil and Gas Programs had become worthless."

Plaintiffs filed the instant lawsuit in March, 1986, alleging private rights of action under the following criminal statutes: Count I—§ 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) ("§ 10(b)") and Securities and Exchange Commission Rule 10b–5 ("Rule 10b–5"), 17 C.F.R. § 240.10–5; Count II—§ 17(a) of the Securities and Exchange Act of 1933, 15 U.S.C. § 77q(a) ("§ 17a") (Count II); Count III—the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"); and, Count IV—the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, § 261 et seq. Plaintiffs also alleged the following Illinois common law claims: Count V—breach of fiduciary duty; Count VI—fraud; and Count VII—against MWE and Huckster only, negligence.

In two sets of well-written and well-reasoned briefs,[1] defendants asserted a number of grounds for dismissing each of the five counts in the complaint. Plaintiffs, in equally articulate papers, countered each of the substantive arguments in turn. In addition, in the period after the motions became fully briefed, both sides promptly informed the court of new decisions which could bear on the resolution of the issues joined in the briefs. This court commends the attorneys involved in this case for their skillful advocacy of their clients' causes.

## DISCUSSION

### Count I

In Count I, plaintiffs seek to recover the losses on their investments in the limited partnerships on the grounds that defendants failed to disclose the earlier loan problems and securities litigation. To recover under a § 10(b) or Rule 10b–5 private cause of action, plaintiffs must first prove that defendants violated the statute or the rule.

---

1. Faestel, FI and Petren jointly filed one motion to dismiss; MWE and Hucker together filed a separate motion to dismiss. With a few excep-

tions not relevant to this court's ruling, both motions raised the same grounds in seeking dismissal of the complaint.

To do so, plaintiffs must establish the following:

(1) that defendants intentionally or recklessly;

(2) misrepresented or omitted to disclose

(3) material facts;

(4) in connection with the purchase or sale of a security.[2]

*Beck v. Cantor,* 621 F.Supp. 1547, 1553 (D.C.Ill.1985). *See also Harris v. Union Electric Co.,* 787 F.2d 355, 362 (8th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986); *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1046 (11th Cir.1987).

Showing a § 10(b) or Rule 10b–5 violation is not, however, enough. To recover, plaintiffs must also prove that they justifiably relied on defendants' misrepresentations or omissions in making their investments and that the misrepresentations or omissions "caused" the losses. *Harris Trust and Savings Bank v. Ellis,* 810 F.2d 700, 706 (7th Cir.1987). *See also Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522 (7th Cir.1985).

Defendants do not contest, for the purposes of the motion to dismiss, that plaintiffs have properly pled the elements of a § 10(b) or Rule 10b–5 violation. Nor do they challenge plaintiffs' contention that, because the claims here are predicated on material omissions, "reliance and 'causation in fact' are presumed." *Beck v. Cantor,* 621 F.Supp. at 1556. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Kademian v. Ladish, Co.,* 792 F.2d 614, 627 (7th Cir.1986) (in § 10(b) cases, "causation [in fact] and reliance are closely related"); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1049 (7th Cir.) ("With materiality established, reliance in an omissions case is presumed."), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155.

Nevertheless, defendants do insist that Count I must be dismissed because plaintiffs have failed to allege a second element necesary to establish legal causation in a § 10(b) case—that defendants' material omissions were causally linked to the loss in value of plaintiffs' investments. Stated differently, defendants claim that Count I fails to state a claim upon which relief may be granted because, although plaintiffs have sufficiently pled "transaction causation"—that the nondisclosures "caused" plaintiffs to invest in Petren A and Petren B—they have not pled "loss causation"— that the nondisclosed information "caused" the subsequent decline in the value of the partnership interests.

The majority of courts to consider the issue have stated that "loss causation" is an essential element in a private action under § 10(b) or Rule 10b–5:

[T]he causation requirement is satisfied in a Rule 10b–5 case only if the misrepresentation touches upon the reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claim-

---

2. Section 10 provides:

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange—

    \*      \*      \*      \*      \*

    (b) To use or employ, in connection with the purchase and sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contrivance of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

    Rule 10b–5 provides:

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a) To employ any scheme, device or artifice to defraud,

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances in which they were made, not misleading, or

    (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. Plaintiffs here ground their claim for relief on an alleged violation of Rule 10b–5(b).

**534**

ant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted.

*Huddleston v. Herman & MacClean,* 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Currie v. Cayman Resources Corp.,* 835 F.2d 780 (11th Cir.1988); *Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277, 1299–1300 (W.D.Mich.1986), *aff'd,* 829 F.2d 13 (6th Cir.1987). *See also Messer v. E.F. Hutton & Co.,* 833 F.2d 909, 924 (11th Cir.1987) (Clark, J., concurring); *Zoelsch v. Arthur Andersen & Co.,* 824 F.2d 27, 35 n. 5 (D.C. Cir.1987); *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 186 n. 16 (3d Cir.1981) ("reliance [and thus 'causation in fact'] is necessary but not sufficient to establish [legal] causation]"), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

In at least one circuit, however, there is an exception to this rule:

A plaintiff 'should not have to prove loss causation where the evil is not the price the investor paid for the security, but the broker's fraudulent inducement of the investor to purchase the security.'

*Kafton v. Baptist Park Nursing Center,* 617 F.Supp. 349, 350 (D.Ariz.1985), *quoting, Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 773 (9th Cir.1984). Furthermore, although the Second Circuit has stated repeatedly that to establish causation for purposes of § 10(b), a plaintiff must "show both *loss causation* ... and *transaction causation*," *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 313 (2d Cir.1986), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1987), *quoting, Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), its recent decision in *Manufacturer's Hanover Trust Company v. Drysdale Securities Corp.,* 801 F.2d 13 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), at least implicitly calls those decisions into question.[3]

■ Nevertheless, this court has determined that plaintiffs here must allege "loss causation" if they are to survive a motion to dismiss, for a number of reasons.

First, this court must give deference to the Third Circuit's recent ruling affirming a district court's dismissal—for failure to allege "loss causation"—of a § 10(b) claim against the same defendants, and grounded on the same facts, as the instant case. *See Sims v. Faestel,*[4] 638 F.Supp. 1281 (E.D.Pa.

**3.** Although the Court in *Manufacturer's Hanover* stated that "loss causation" remains an essential element in § 10(b) cases, it then proclaimed that "loss causation" can be established by showing the defendants could have reasonably foreseen that their misstatements would induce the plaintiffs to invest. While that is, to be sure, a *proximate cause* requirement, it most certainly is not a *"loss causation"* requirement, at least not "loss causation" in the sense that term has been used by other courts.

Indeed, by equating "loss causation" with "proximate causation," the court oversimplified and confused the central issue involved in these cases. The question is not whether plaintiffs must establish "proximate" as well as "but-for" cause in § 10(b) cases; proximate cause is always a prerequisite to recovery. *See First Interstate Bank of Nevada v. Chapman & Cutler,* 837 F.2d 775 (7th Cir.1988) (dismissing § 10(b) case against defendants for alleged fraud in connection with sale of McCormick A bonds because alleged fraud was a "but-for" but not a "proximate" cause of plaintiff's loss on purchase of McCormick B bonds, which defaulted after the funds raised from their issuance were used to repay the McCormick A bond holders). Rather,

the question is whether the plaintiff must prove not only that the violation proximately caused the investment decision, but that it proximately caused the economic harm as well.

The oversimplification in *Manufacturer's Hanover* led defendants here to argue erroneously that that ruling supports their "loss causation" argument. In fact, the *dicta* in that case—that to show loss causation plaintiffs must prove that the *investment decision* "was either a direct result of the misleading statement or one which could reasonably have been foreseen," *id.* at ¶ 94,394; *see infra* n. 6—would, if adopted by this court, defeat the instant motions to dismiss.

**4.** Defendants have argued that, because *Sims* was brought as a class action on behalf of all of the limited partners in the Petren partnerships, this court should apply collateral estoppel to the issues resolved in that case. The district court in *Sims,* however, dismissed the case without certifying the class, so issue preclusion is inappropriate. Nevertheless, the fact that the decision was based on nearly identical questions of fact and law, and was affirmed by the Third Circuit, mandates that this court give it deference here. *Premier Electric Construction Co. v.*

1986), *aff'd mem.*, 813 F.2d 399 (3d Cir. 1987).

Second, while the Seventh Circuit has never squarely addressed the issue,[5] two district courts in this circuit have recently dismissed § 10(b) claims for failing to allege "loss causation". *See Rankow v. First Chicago Corporation*, 678 F.Supp. 202 (N.D.Ill.1987); *TFG, Inc. v. Sullivan*, No. 86–4176, slip op. (N.D.Ill. Oct. 20, 1986) [Available on WESTLAW, 1986 WL 11996].

Third, the courts which have rejected a "loss causation" requirement have done so in cases involving a particular and special form of § 10(b) violation—stock broker "churning" of client accounts. *See, e.g., Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767 (9th Cir.1984); *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167 (2d Cir.1970). In these cases, stock brokers cheat their clients out of commissions by fraudulently inducing them to purchase excessive amounts of stock. The fraud generally involves misrepresentations as to the brokers' skills in picking winning stocks or the potential gains available to the customers through a particular investment strategy. *See, e.g., Marbury Management Inc. v. Kohn*, 629 F.2d 705 (2d Cir.) (trainee at brokerage firm fraudulently misrepresented himself as a "portfolio management specialist" and thereby persuaded plaintiffs to purchase highly speculative stocks), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Courts have held these brokers accountable not only for their commissions, but also for the customers' losses on their investments, despite the fact that it was the decline in the overall market, not the misinformation which caused the stocks' prices to fall.[6] *See Hatrock v. Edward D. Jones & Co., supra; Chasins v. Smith, Barney & Co., supra; Marbury Management Inc. v. Kohn, supra. But see In re Catanella and E.F. Hutton & Co.*, 583 F.Supp. 1388 (E.D.Pa.1984).

These cases provide weak authority for rejecting a "loss causation" requirement in the instant case, for two reasons. First, the courts permitting full recovery of the losses appear (at least implicitly) to have predicated their decisions on the theory that, while the brokers' misrepresentations did not cause the stocks' prices to fall, they did cause the customers to overestimate—on the basis of their brokers' "advice"—the value of their investments at the time of the purchases. *See Bennett v. United States Trust Co. of New York*, 770 F.2d at 314 (explaining *Marbury Management*: "In essence, the stock in question did not have the value represented by the broker."). Under this theory, the subsequent decline in the stocks' prices served, in effect, as proxies for the "losses" which the clients suffered at the *time of their investments*—losses which clearly fall within the parameters of the "loss causation" requirement. *See, e.g., Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981) (where misinformation provided by defendant results in plaintiff paying too much, or receiving too little for his stock, "loss causation" exists), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). Thus, the churning cases may not even represent exceptions to the loss causation requirement.

*N.E.R.C.*, 814 F.2d 358, 367 (7th Cir.1987); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123–24 (7th Cir.1987).

**5.** The Seventh Circuit has used the term "loss causation" in referring to the requirement that a § 10(b) or Rule 10b–5 plaintiff prove that he suffered a financial loss as a result of the violation. *See Kademian v. Ladish, Co.*, 792 F.2d 614, 627 (7th Cir.1986). The court did not address the requisite causal nexus between the alleged violation and the harm suffered. *Compare Harris Trust and Savings Bank v. Ellis*, 810 F.2d 700 (7th Cir.1987) (same proposition without using term "loss causation").

**6.** Although *Manufacturer's Hanover Trust Company v. Drysdale Securities Corp., supra*, was not a broker case, it does not necessarily deviate from this rule. Although, as noted *supra* n. 3, the Court there did not require "loss causation" as that term has been used in this opinion, the existence of "loss causation" in that case was clear. *See Zoelsch v. Arthur Andersen & Co.*, 824 F.2d at 35 n. 5 (explaining *Manufacturer's Hanover* as requiring *both* lost causation and transaction causation). Accordingly, the narrow holding of that case was simply that plaintiff had sufficiently established "transaction causation"—that is, a proximate causal nexus between the § 10(b) violation and the subsequent purchase.

Moreover, to the extent that these cases cannot be reconciled with those requiring "loss causation," they represent an unwarranted break with traditional notions of legal causation. In his dissent in *Marbury Management*, Judge Meskill refused to read the majority's imposition of liability against the defendant as anything but a complete rejection of the "loss causation" requirement. He then proceeded to condemn the majority's result, in an opinion recently cited with approval by the Seventh Circuit:

> I share my colleague's condemnation of [defendant's] misconduct and express no view as to whether recourse may lie in an appropriate court under a theory more feasible than the one advanced by plaintiffs. In approving [defendant's] present sanction, however, the majority is more righteous than right, for its decision abandons the traditional understanding of causation in the context of the sale of securities induced through misrepresentation, disregards governing precedent and extends the reach of § 10(b) beyond that of its common law antecedent to provide for recovery in cases in which federal policies are offended by such expansion.

*Marbury Management Inc. v. Kohn*, 629 F.2d at 717 (Meskill, J., dissenting), *cited with approval, First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775 (7th Cir.1988).

What Judge Meskill said in a case involving a stock broker selling stocks to his less experienced customers applies with even greater force in cases involving sales of partnership interests in obviously speculative capital ventures. *See Platsis v. E.F. Hutton & Co., supra.* Without condoning securities fraud in any context, this court can see no basis for "transform[ing] the perpetrator of the [securities] fraud into 'an insurer of the investment, responsible for an indefinite period of time for any and all manner of unforeseen difficulties which may eventually beset the [investment].'" *In re Catanella and E.F. Hutton & Co. Securities Litigation*, 583 F.Supp. at 1417, *quoting Marbury Management*, 629 F.2d at 718 (Meskill, J., dissenting). According-

ly, this court will adhere to the traditional common law rule that "if false statements are made in connection with the sale of corporate stock, losses due to a subsequent decline of the market, or insolvency of the corporation, brought about by business conditions or other factors in no way related to the representations, will not afford any basis for recovery." Prosser, *Law of Torts* § 100 at 732 (4th ed.) (footnotes omitted).

Plaintiffs here have not even attempted to plead that the information defendants allegedly omitted from the Offering Memoranda caused the decline in their Petren A and Petren B partnerships interest. Perhaps the ventures became worthless because defendants were incompetent or irresponsible; if so, plaintiffs may be able to plead, in an amended complaint, a causal nexus between the non-disclosures and their economic loss. On the other hand, the investments may be worthless for reasons completely unrelated to the non-disclosures; in that case, an amended complaint would not only fail, but might be subject to sanctions. Whatever the case, one thing is clear: Count I of the complaint as it now stands must be dismissed without prejudice.

### Count II

Count II alleges the same facts as Count I but seeks relief under § 17(a). This court will not tarry long in dispensing with this claim. First, for the reasons set forth most recently by the Ninth Circuit in *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987) (*en banc*), and already articulated by a number of district judges in this circuit, *e.g., Beck v. Cantor*, 621 F.Supp. 1547, 1553 (D.C.Ill.1985) (Rovner, J.), this court holds that there is no implied private right of action under § 17(a). Moreover, even were such an implied right of action available, plaintiffs could not state a claim for relief under it here. *See Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 531 (7th Cir.1985) (where allegations under § 10(b) and § 17(a) overlap, the § 17(a) claim "adds

nothing to the plaintiff's arsenal"). Accordingly, Count II will be dismissed with prejudice.

### Count III

In Count III, plaintiffs seek treble damages under RICO, 18 U.S.C. 1964(c),[7] on the grounds that the violations of § 10(b) and § 17(a) alleged in Counts I and II constitute a "pattern of racketeering activity,"[8] that through this "pattern of racketeering activity" defendants conducted the affairs of the Petren IA and Petren IB "enterprises," and that plaintffs were damaged "by reason of" this activity.

Defendants have moved to dismiss on three grounds: First, the insufficiency of the § 10(b) and § 17(a) claims means that defendants have failed to sufficiently plead *any* predicate acts of racketeering activity; second, even if plaintiffs have properly pled securities violations, they have pled only a single violation with respect to each Petren "enterprise" and thus have failed to properly allege a RICO violation; and, third, even if plaintiffs have sufficiently alleged a RICO violation, they lack standing because they have not alleged how they were injured by it.

The first and third arguments indicate that defendants misconstrue the interaction between the securities laws and the RICO claims predicated on them. As defendants themselves argued, plaintiffs failed to state a claim under Counts I and II not because defendants did not violate the securities laws, but rather because courts, in implying private rights of action under these laws, have imposed an additional "loss cau-

sation" requirement. *See United States v. Newman,* 664 F.2d 12 (2d Cir.1981) ("It is only because the judiciary has created a private cause of action for damages [under § 10(b)] the "contours" of which are not described in the statute, that standing in such cases has become a pivotal issue."), *cert. denied,* 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983).

This judicially-imposed limitation on such rights of action simply does not apply to the statutorily-created RICO claims. *See Sedima, S.P.R.L. v. Imrex Corp.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). To recover under § 1964(c), plaintiffs need only establish that they were injured "by reason of" a RICO violation. And to prove a RICO violation, plaintiff need only prove a pattern of "fraud in the sale of securities." They need not allege nor prove that they could actually recover in a private action under the securities laws.

■ Thus, assuming for the moment that the alleged violations of §§ 10(b) and 17(a) constituted a "pattern of racketeering activity," plaintiffs need only allege, for the purposes of their RICO claim, that the securities violations "caused" them to purchase stock that subsequently declined in price. *Haroco, Inc. v. American National Bank & Trust of Chicago,* 747 F.2d 384 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). This much they have clearly done.[9] Accordingly, defendants' first and third arguments for dismissing the RICO claim must fail.

■ Defendants' second argument for dismissing Count III, however, will carry

---

**7.** 18 U.S.C. § 1964(c) provides:
Any person injured in his business or property by reason of a violation of § 1962 of this chapter may sue therein in any United States district court and shall recover threefold the damages he sustains and the cost of the suit including a reasonable attorney's fee.

**8.** 18 U.S.C. § 1961(5) states that:
a "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred within ten years after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

The term "racketeering activity" encompasses a broad scope of criminal activity including "any act 'chargeable' under severally generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (summarizing 18 U.S.C. § 1961(1)).

**9.** Defendants conceded in the first part of their brief that plaintiffs had pled "transaction causation."

the day. In this count, plaintiffs have alleged that defendants conducted each Petren partnership through a single distinct act of securities fraud[10]—and that the two acts, taken together, constitute a "pattern of racketeering activity" in violation of § 1962(c). Defendants maintain that, because plaintiffs have identified each Petren partnership as a separate enterprise, and because in order to allege a § 1962(c) violation, plaintiffs must point to a single enterprise which defendants conducted through a pattern of racketeering activity, this count fails to state a RICO claim. Defendants are clearly correct here.

While considerable debate has focused on whether and when two predicate racketeering acts are sufficiently "related and continuous" to constitute a "pattern of racketeering activity," there has never been any doubt that, to state a claim under § 1962(c), a RICO plaintiff must identify a single enterprise, the affairs of which the defendant conducted through a pattern of such activity. Indeed, the words of the statute itself make this clear:

> It shall be unlawful for any person employed by or associated with *any enterprise* ... to conduct or participate ... in the conduct of *such enterprise's* affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c) (emphasis added). *See also Sedima, S.P.R.L. v. Imrex Corp.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("the essence of the [§ 1962(c)] violation is the commission of the [predicate] acts in connection with the conduct of *an enterprise*") (emphasis added).

Because plaintiffs have not alleged a single enterprise, the affairs of which defendant conducted through two or more acts of racketeering activity, this court will grant defendants' motion to dismiss Count III. However, because it is possible that plaintiffs may yet be able to remedy the defect

in this count, the dismissal will be without prejudice.

### Counts IV–VII

Counts IV through VII are state law claims brought pursuant to this court's pendent jurisdiction. Since the federal claims have all been dismissed, this court has decided not to exercise its discretion to hear these claims and will instead dismiss them without prejudice. Should plaintiffs seek to file an amended complaint, they can reallege the state law claims at that time.

### CONCLUSION

Count II is dismissed with prejudice. The rest of the complaint is dismissed without prejudice.

---

10. Although the complaint attempts to identify two predicate "acts" with respect to each Petren enterprise by alleging each securities violation twice—once as a violation of § 10(b), then as a violation of § 17(a)—plaintiffs do not pursue this position in their response brief. They are right not to do so. A single criminal act clearly cannot constitute a "pattern of racketeering activity," regardless of how many statutes it violates, if for no other reason than that it cannot possibly satisfy the "continuity" prong of the "relationship plus continuity" requirement.