**BUFORD WHITE LUMBER COMPANY PROFIT SHARING AND SAVINGS PLAN & TRUST, et al., Plaintiffs,**

v.

**OCTAGON PROPERTIES, LTD., et al., Defendants.**

No. CIV 88–1829–R.

United States District Court, W.D. Oklahoma.

May 11, 1989.

1556

Ernest J. Istook, Oklahoma City, Okl., for plaintiffs.

Arlen E. Fielden, Arthur F. Hoge III, Crowe & Dunlevy, Warner E. Lovell, Jr., Burck Bailey, Eric S. Eissenstat, Fellers Snider Blankenship Bailey and Tippens, B.J. Brockett, Anthony L. Jackson, J. Mark Spaeth, Brady Schaulat Falsetti & Connell, Oklahoma City, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court is the motion of Defendant Andrews Davis Legg Bixler Milsten &

Murrah, Inc. to dismiss Plaintiffs' Amended Complaint pursuant to Rule 9(b) and 12(b)(6), F.R.Civ.P.

In the Amended Complaint, Plaintiffs allege that Defendant prepared a series of *prospectuses*, offering circulars and related documents relating to the sale of limited partnerships and stock in Octagon Properties, Ltd. with the purpose and intent that they would be relied upon by potential investors such as the Plaintiffs. *See* Amended Complaint at ¶ 64. *See also id.* at ¶ 77. Plaintiffs specifically allege that Defendant prepared a "February, 1986, stock offering document" which included false and misleading statements, all of which related to the financial condition of Octagon Properties, Ltd. *Id.* at 65–66. Plaintiffs allege that Defendant by the exercise of due diligence either knew or should have known that statements in the offering document were false and misleading, *id.* at ¶ 66, and that Defendant made no effort to verify the accuracy of information concerning the financial condition of Octagon Properties, Ltd. or to require inclusion in the offering document of "independent data" concerning Octagon's financial condition. *See id.* at ¶ 67. Rather, Plaintiffs allege that Defendant "accepted unquestionably and uncritically the information supplied by Dennis Lowder and Octagon Properties." *Id.* Plaintiffs further allege that Defendant had an obligation to the public and to Plaintiffs under federal and state securities laws to register the securities and to exercise due diligence to assure that statements and representations in "said documents" were true and accurate but that Defendant breached these duties. *Id.* at ¶ 68. Had Defendant "exercised due diligence, provided the required registration statements, and assured that all necessary information was obtained, ... was correct, and was disclosed," *id.* at ¶ 70, Plaintiffs aver that they wouldn't have invested what they did with Octagon Properties and would "not have lost their investments." *Id.* Additionally, Plaintiffs allege that Defendant acted either with knowledge of the misstatements or "with such reckless disregard ... as amounts in law to malicious, intentional and knowing conduct, due to their failure to exercise due diligence to inquire into the true circumstances." *Id.* at ¶ 73. *See also id.* at ¶ 77. Plaintiffs allege that they relied on Defendant's misrepresentations to their detriment and damage. *Id.* at ¶ 77. Plaintiffs further allege that Defendant is a seller of securities, *id.* at ¶ 75, and that it received from Octagon in excess of $42,000.00 for its services in preparing offering documents, *id.* at ¶ 71, an amount Plaintiffs allege exceeds "fair compensation for the degree of inquiry conducted." *Id.*

## I. *Violations of Sections 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 771*

### A. Primary Liability

In support of its motion to dismiss Plaintiffs' Section 12(1) and Section 12(2) claims, Defendant first asserts that Plaintiffs have not alleged, nor could they allege, that Defendant "sold" or "solicited" the sale of securities to Plaintiff within the contemplation of *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

In *Pinter v. Dahl*, the United States Supreme Court rejected the "substantial factor" test for *primary* liability under Section 12(1) and held that the class of Defendants subject to primary liability under Section 12(1) of the Securities Act of 1933 is limited to 1) those who pass title to the security to a buyer for value; and 2) those who successfully solicit the purchase of a security, "motivated at least in part by desire to serve ... [their] own financial interests or those of the securities owner." 486 U.S. at 640–652 & 647, 108 S.Ct. at 2075–2081 & 2078, 100 L.Ed.2d at 678–685 & 682.

Plaintiffs in response first assert that the *Pinter* decision's application is limited to defining those who may be primarily liable for violations of Section 12(1). While the *Pinter* case expressly addressed Section 12(1) only and its holding is limited to who may be primarily liable under that section, the reasoning of the *Pinter* decision is equally applicable to Section 12(2) inasmuch as Section 12(2), like Section 12(1), applies to persons who "offer" and

"sell" securities and the same definitions of those terms, *see* 15 U.S.C. § 77b(3), which the Supreme Court construed in *Pinter*, apply to both subsections (1) and (2) of Section 12. *Accord Abell v. Potomac Insurance Co.*, 858 F.2d 1104, 1113–115 (5th Cir.1988), *petition for cert. filed* March 13, 1989.

The Court therefore examines Plaintiffs' allegations that Defendant offered and sold securities in violation of Sections 12(1) and 12(2) in light of the teaching of *Pinter v. Dahl*. Plaintiffs first allege that Defendant "is a seller of securities, within the meaning of 15 U.S.C. § 77*l* (2) . . . in that it was a substantial factor in causing said sales to take place, and aided and abetted the conspiracy previously described. . . ." Amended Complaint at ¶ 75. Plaintiffs also allege that as a seller, Defendant prepared at least one prospectus, for the February 1986 stock offering (and possibly others, *see id.* at ¶¶ 76), and that by preparing the offering of securities, Defendant "obtained money for itself, and for Octagon Properties." *Id.* at ¶ 78.

■ Plaintiffs' allegations of a motive of financial gain for itself or the issuer satisfy that aspect of the *Pinter* definition of an offeror or seller. Thus, the sole question presented by Plaintiffs allegations and Defendant's *Pinter*-based argument is whether a law firm which prepares an offering document, motivated at least in part by a desire to obtain financial benefit for itself and/or the issuer can, without more, be a "solicitor" of a purchase or offer to purchase.

■ Upon a careful examination of the Supreme Court's description of the terms "solicit" and "solicitation," as well as its stated rationale for rejecting the "substantial factor" test, the Court is persuaded that it may not. First, a law firm which prepared an offering memorandum is not one which would "commonly be said, and would be thought by the buyer, to be among those 'from' whom the buyer 'purchased'. . . ." 486 U.S. at 643, 108 S.Ct. at 2077, 100 L.Ed.2d at 680. Secondly, mere preparation of an offering memorandum is not actively "directed at producing the

sale," 486 U.S. at 646, 108 S.Ct. at 2078, 100 L.Ed.2d at 682; rather, such activity may more properly be characterized as a condition necessary to a sale, or as an activity without which there would be no sale, satisfying a mere "but for" causation test. *See e.g., Davis v. Avco Financial Services, Inc.*, 739 F.2d 1057, 1067 (6th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 381 (1985) (overruled on other grounds in *Pinter v. Dahl, see* 486 U.S. at 649 n. 25, 108 S.Ct. at 2080 n. 25, 100 L.Ed.2d at 683 n. 25). A law firm which does no more than prepare an offering memorandum is not "persuading" or "urging" a person to purchase and thus is not "soliciting" a purchase as contemplated by the Supreme Court in *Pinter v. Dahl*. *See* 486 U.S. at 646, 108 S.Ct. at 2078, 100 L.Ed.2d at 682. While it is true that a preparer of an offering memorandum may be "well positioned to control the flow of information to a potential purchaser" and may be said to "*disseminate* material information to investors," *id.* (emphasis added), it is apparent that the relationship between a law firm which prepared an offering document and a plaintiff purchaser is not that of a seller or solicitor and purchaser as contemplated by the Supreme Court:

The "purchase from" requirement of § 12 focuses on the defendant's relationship with the plaintiff-purchaser. The substantial-factor test, on the other hand, focuses on the defendant's degree of involvement in the securities transaction and its surrounding circumstances. Thus, although the substantial-factor test undoubtedly embraces persons who pass title and who solicit the purchase of unregistered securities as statutory sellers, the test would also extend § 12(1) liability to participants only remotely related to the relevant aspects of the sales transaction. Indeed, it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for rescission. The buyer does not, in any meaningful sense, "purchas[e] the security" from such a person.

486 U.S. at 651, 108 S.Ct. at 2081, 100 L.Ed.2d at 684–85 (footnote omitted).

In the face of the foregoing language, it must be concluded that a law firm which is alleged to have prepared an offering memorandum but not to have any personal contact with the plaintiff purchasers at best merely assists in another's solicitation efforts or participates in soliciting a purchase, neither of which relationships with the plaintiff purchasers are sufficient to render the law firm a statutory seller. *See* 486 U.S. at 651 n. 27, 108 S.Ct. at 2081 n. 27, 100 L.Ed.2d at 685 n. 27.

### B. Statutes of Limitations

Defendant asserts that Plaintiffs' Section 12(1) and 12(2) claims are barred by the applicable one-year and two-year statutes of limitations, respectively, 15 U.S.C. § 77m inasmuch as the sales of securities which are the subject of this action took place "sometime in early 1986 and Plaintiffs did not institute suit until September 20, 1988." Defendant also maintains that Plaintiffs' allegations concerning discovery are insufficient to toll the statute of limitations for Section 12(2).

Plaintiffs maintain that allegations in their Amended Complaint together with affidavits attached to their Complaint contain sufficient factual basis for tolling both statutes of limitations until March of 1988.

▮ The one-year limitation period governing section 12(1) claims, 15 U.S.C. § 77m, is not subject to a discovery rule or equitable tolling. *McCullough v. Leede Oil & Gas, Inc.,* 617 F.Supp. 384, 387 (W.D. Okla.1985). Accordingly, the Court examines Plaintiffs' pleading to determine whether Plaintiffs have alleged a "violation" of section 12(1) within one year prior to the date suit was filed, *see* 15 U.S.C. § 77m, so as to satisfy their burden of affirmatively pleading compliance with the statute of limitations. *See, e.g., Toombs v. Leone,* 777 F.2d 465, 468 (9th Cir.1985); *Cook v. Avien, Inc.,* 573 F.2d 685, 691 (1st Cir.1978). To the extent Plaintiffs rely on the offer of unregistered securities by mailing of the offering memorandum for the 1986 stock offering in Octagon Properties, Inc., *see* Petition (now Complaint) at ¶ 2 and Amended Complaint at ¶¶ 64–68, as the "violation," Plaintiffs' § 12(1) claims are barred by the statute of limitations. Plaintiffs allege that this offer occurred in February of 1986, more than one year prior to the date suit was filed. Moreover, the offering memorandum, which is attached to Plaintiffs' Amended Complaint as Exhibit "I," itself shows that Plaintiffs' claims for § 12(1) violations based upon the offer are barred by the one-year statute of limitations. The offering memorandum, dated February 28, 1986, states that the offer expires May 31, 1986 unless extended by the issuer and in no event later than August 31, 1986. *See* Exhibit "I" to Amended Complaint at p. ii & Exh. C. To the extent Plaintiffs rely on the sales or deliveries of the securities as the "violation(s)," Plaintiffs have failed to allege when these sales or deliveries occurred, see Petition at ¶¶ 2 & 3, and thus have failed to show that their claims were brought within the one-year limitations period.

▮ The one year limitations period applicable to Section 12(2) claims does not begin to run until discovery of the untruth or omission or until such time as discovery should have been made by the exercise of reasonable diligence, whichever first occurs. *See* 15 U.S.C. § 77m. Compliance with this statute must be affirmatively alleged. *See, e.g., Gale v. Great Southwestern Exploration Co.,* 599 F.Supp. 55, 57 (N.D.Okla.1984); *In re Longhorn Securities Litigation,* 573 F.Supp. 255, 266 (W.D. Okla.1983); *Woods v. Homes and Structures of Pittsburg, Kansas, Inc.,* 489 F.Supp. 1270, 1290 (D.Kan.1980). Plaintiffs have alleged that "[e]vents involved herein which occurred more than two years ago each were not known by or disclosed to Plaintiffs until either 1988 or in some instances late in 1987, and could not reasonably have been discovered by them previously." Petition (now Complaint) at ¶ 8. While it is at best inartful to refer to omissions in connection with the sale of securities as "events," when all reasonable inferences which may be drawn from this allegation are entertained in Plaintiffs' favor, the Court concludes that this averment

is sufficient, though minimally so, to satisfy Plaintiffs' burden of pleading compliance with the applicable one-year limitations period. The Court cannot say that Plaintiffs can prove no facts entitling them to relief on these claims. Neither this Court nor any judge in this district nor the Tenth Circuit has, to this Court's knowledge, ever adopted or employed the stringent three-part test for the sufficiency of allegations of discovery, see *Conley v. First Jersey Securities, Inc.*, 543 F.Supp. 368 (D.Del.1982); *Kroungold v. Triester*, 407 F.Supp. 414 (E.D.Pa.1975), urged by Defendant and the Court declines to now adopt it.

## II. *Violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and S.E.C. Rule 10b–5, 17 C.F.R. 240.10b–5*

### A. Primary Liability

Defendant challenges Plaintiffs' claim against it for a primary violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, on the ground that Defendant had no duty to disclose the alleged misrepresentations or omissions of Octagon Properties, Ltd. to the Plaintiffs. Defendant points out that absent a duty to disclose, silence cannot be fraudulent, citing *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Insurance Corp.*, 805 F.2d 342, 347 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and then asserts that professionals such as law firms and accountants have no duty to disclose the fraud of their clients, citing numerous cases.

Plaintiffs do not disagree with Defendant's characterization of what their Complaint alleges regarding the manner in which Defendant is alleged to have violated Section 10(b) and Rule 10b–5. Rather, Plaintiffs assert that Defendant had a host of duties to Plaintiffs giving rise to a duty

to disclose. The Court will examine these asserted duties in turn.

First, Plaintiffs allege and argue that Defendant was performing legal services for the limited partnerships in which Plaintiffs were limited partners (*see* Petition, now Complaint at ¶ 5a & ¶ 1v and Amended Complaint at ¶¶ 64 & 65) and therefore was necessarily performing legal services for each of the limited partners and thus had duties to them. Plaintiffs extract this argument from state statutes providing that a limited partnership is a type of partnership, see Okla.Stat. title 54 § 142, and that a limited partner has the same rights as a general partner to have true and full information concerning the partnership, see Okla.Stat. tit. 54, § 151(a)(2) and from a California case holding that upon formation of a general partnership, the general partners were joint clients of a law firm.[*] Plaintiffs assert that this principle of an attorney's duty is also supported by cases holding that an attorney advising a fiduciary about an employee's benefit plan necessarily represents not just the fiduciary personally, but the employee beneficiaries as well, *see Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982); that an attorney representing an unincorporated association represents each member thereof, citing *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148 (E.D.Pa. 1969); *Schwartz v. Broadcast Music*, 16 F.R.D. 31 (S.D.N.Y.1954); and that an attorney for a trustee necessarily is obligated toward the beneficiaries of that trust. *Riggs National Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del.Ch.1976).

Defendant replies that a lawyer representing a partnership or other legal entity does not become counsel for the individual partners, owners or investors, citing a number of cases from other jurisdiction. De-

---

[*] Although the plaintiffs cite *Miller, Morton, Caillat & Nevis v. Superior Court*, 215 Cal.Rptr. 365, 169 Cal.App.3d 552 (Cal.App.1985), in support of this proposition, the court recognizes that this opinion has been ordered not to be officially published.

fendant observes that this principle comports with the Oklahoma Rules of Professional Conduct, Okla.Stat. title 5, Ch. 1, App. 3–A, Rule 1.13 (Supp.1988) and the former Code of Professional Responsibility, Okla.Stat. title 5, Ch. 1, App. 3, EC 5–18.** Further, Defendant maintains that two cases support the specific proposition that an attorney for a partnership or for a general partnership does not assume obligations to the limited partners. Defendants cite *Mursau Corp. v. Florida Penn Oil & Gas, Inc.,* 638 F.Supp. 259 (W.D.Pa. 1986), *aff'd,* 813 F.2d 398 (3rd Cir.1987) and *Hackett v. Village Court Associates,* 602 F.Supp. 856 (E.D.Wis.1985).

First, the California case cited by Plaintiffs was ordered not published and as such has little or no persuasive value. *See* Rule 976, Cal. Rules of Ct.

■ Secondly, the offering memorandum which is attached to the Amended Complaint shows that Defendant's role in preparing it was as counsel to Octagon Properties, Ltd. in its corporate capacity (rather than in its capacity as general partner to the partnerships) and not as counsel to the partnerships. Thus, any inference that Defendant was acting as counsel to the limited partners in its role in preparation of the offering memorandum for the exchange offer is not justified in fact and would require an inference that Defendant was acting as counsel both to the seller and the purchasers (and vice versa) in an exchange transaction, in a potential direct conflict-of-interest situation. *See* Okla. Stat. title 5, Ch. 1, App. 3, DR 5–105. Such an inference is also inconsistent with the Offering Memorandum's suggestion that "[o]fferees should consult their own advisors prior to exchanging any interest," Offering Memorandum at p. 3. *Accord Mursau Corp. v. Florida Penn Oil & Gas, Inc.,* 638 F.Supp. at 262–63.

■ Thirdly, the provision of the Uniform Limited Partnership Act which Plaintiffs cite does create informational rights in limited partners from which a correlative duty on the part of general partners to provide the same information which such general partner is entitled to receive from another general partner, *see* 6 U.L.A., Uniform Limited Partnership Act § 10(1)(b), codified at Okla.Stat. title 54, § 151(a)(2) and 6 U.L.A., Uniform Partnership Act § 20, codified at Okla.Stat. title 54, § 220, may be inferred, but in the Court's opinion, this statute cannot fairly be interpreted to impose duties on third persons. An interpretation of this statute which would impose a duty on an attorney for a general partner to disclose all information obtained from such general partner pertaining to "things affecting the partnership" while in a confidential attorney-client relationship with the general partner would severely undermine the attorney-client privilege and could well make it impossible for a general partner to obtain legal advice about matters in which the general partner's interests may conflict with the limited partners' interests.

Moreover, even if the statute were to be construed to create in third parties such as an attorney the duty to provide limited partners the same information that they provide to general partners, such a construction would not aid the Plaintiffs herein. The Offering memorandum shows that Defendant did not provide Octagon Properties, Ltd., general partner of the partnerships, or for that matter anyone, any information about Octagon Properties, Ltd.'s financial condition:

The historical and Pro Forma financial statements of OCTAGON and the Partnerships contained in this Offering Circular *have been prepared by OCTAGON,* are unaudited and the content thereof is the sole responsibility of OCTAGON.

The Exchange Values are based upon estimates made solely by Octagon, not based on independent appraisals, of the values of the properties and interests.

---

** The Court notes that the ABA Ethical Considerations were never codified in the Oklahoma Statutes.

Offering Memorandum, Exhibit "I" to Amended Complaint at p. (viii) (unnumbered) (emphasis added).

*See also id.* at p. 3 & 47.

Next, Plaintiffs argue that Oklahoma law imposes a special duty upon attorneys involved with securities, without regard to privity or an attorney-client relationship and without regard to securities statutes, citing *Bradford Securities Processing Services, Inc. v. Plaza Bank and Trust,* 653 P.2d 188 (Okla.1982). Plaintiffs assert that the *Bradford* case is an extension of the liability of professionals without regard to privity when it is foreseeable that their negligent performance of professional services will injure others which Plaintiffs assert the Oklahoma Supreme Court recognized in *Keel v. Titan Construction Corp.,* 639 P.2d 1228 (1982).

As Defendant points out, however, the *Bradford* case is factually distinguishable in that it involved affirmative representations by a lawyer in the form of a signed opinion letter. Under these circumstances it was foreseeable to the attorney that his opinion would be relied upon by purchasers of the bonds to their injury and *because* this was foreseeable, the attorney had a duty to use ordinary care to prevent injury. *See* 653 P.2d at 190–191. Thus, the Oklahoma Supreme Court recognized a common law cause of action for negligent misrepresentation in the defined circumstances. However, a cause of action for negligent misrepresentations does not apply to omissions. *See* Restatement (Second) of Torts § 552 (1977) (Information Negligently Supplied for the Guidance of Others); Comment 6, Restatement (Second) of Torts § 525 (defining misrepresentation). *Compare with* Restatement (Second) of Torts § 551 (Liability for Nondisclosure, requiring existence of a duty). In the instant case Defendant asserts and Plaintiffs agree that the claim against Defendant is for its failure to disclose misrepresenta-

tions and omissions of Octagon Properties, Ltd.

Even if this Court were to import the *Bradford* definition of duty to this non-disclosure case, the Court would be compelled to conclude that no duty existed. An ordinarily prudent person in Defendant's position could not reasonably foresee that the Plaintiffs or persons in their position would rely upon Defendant to disclose misrepresentations or omissions in the financial statements of the issuer and would thus suffer injury as a result of such non-disclosure in view of the circumstances of the case. The Offering Memorandum not only stated that the financial statements were prepared by Octagon and were its sole responsibility, but it also stated as follows:

Thorough analysis of this Exchange Offer requires a review and verification by an Offeree's tax, legal and business advisors and may require review by consultants, including appraisers. Counsel to the Company is not experienced in reviewing and verifying such economic factors *nor has it attempted to do so.* Offerees should consult their own advisors prior to exchanging any interests.

Offering Memorandum Exhibit "I" to Amended Complaint, at p. 3.

The validity of the issuance of the Common and Preferred Stock offered hereby will be passed upon for the Company and the matters in connection with Federal income tax law and tax consequences to the offerees have been passed upon by the firm of Andrews Davis Legg Bixler Milsten & Murrah, Inc., 500 West Main, Oklahoma City, Oklahoma 73102.

*Id.* at p. 47.

The financial statements of OCTAGON as of September 30, 1985, do not conform with the requirements of Regulation S–X of the Securities Act of 1933, as amended, and are unaudited. No representation is made that the financial statements of OCTAGON are in accordance with

generally accepted accounting principles. *Id.*

In the face of these disclaimers and disclosure of the limited undertaking of Defendant with respect to information or matters disclosed in the offering memorandum, it would be unforeseeable as a matter of law to a prudent law firm in Defendant's position that potential purchasers, including Plaintiffs, would rely upon Defendant's nondisclosure of any misrepresentations or omissions in the financial statements of Octagon as a representation by Defendant that the statements were accurate by reason of which Plaintiffs might be harmed. So too was it unforeseeable as a matter of law to a person in Defendant's position that persons similarly situated to Plaintiffs would understand that *Defendant* was furnishing financial statements of Octagon Properties, Inc. for the guidance of such persons in their business transactions. The Offering Memorandum states that the financial statements were prepared by and were the sole responsibility of Octagon. In short, Defendant did not undertake to prepare, evaluate the accuracy of, or opine upon the accuracy of financial statements furnished by Octagon and said so. It could not, therefore, have foreseen that persons in Plaintiffs' position would nevertheless expect Defendant to disclose any misrepresentations or omissions in Octagon's financial statements. "The particulars in which the recipient of information supplied by another is entitled to expect the exercise of care and competence depend on the character of the information that is supplied." Comment e, Restatement (Second) of Torts § 552. *Accord, Abell v. Potomac Insurance Co.*, 858 F.2d at 1124 n. 20, 1124–1133 ("In general, the law recognizes ... suits [by third parties against lawyers] only if

the non-client plaintiff can prove that the attorney prepared specific legal documents *that represent explicitly* the legal opinion of the attorney preparing them, for the benefit of the plaintiff," noting that this rule adopted by a growing number of states reflects the increasing influence of § 552).

Other arguments made by the Plaintiffs are equally unavailing. Plaintiffs attempt to extract a duty to disclose from an attorney's ethical obligation not to "[k]nowingly make a false statement of law or fact." Okla.Stat. title 5, ch. 1, App. 3, DR 7-102(a)(5). This imposes upon attorneys a duty not to make affirmative misrepresentations of law or fact but does not impose upon them an affirmative duty to disclose others', including their clients', misrepresentations or omissions. Plaintiffs invoke an attorney's obligation to exercise due diligence:[1]

> The duty of the lawyer includes the obligation to exercise due diligence, including a reasonable inquiry, in connection with *responsibilities he has voluntarily undertaken.* A lawyer has no privilege to assist the issuer circulate statements which he knows or should know to be false simply because they were furnished to him by his client.
>
> *Felts v. National Account Systems Association, Inc.*, 469 F.Supp. 54, 67 (N.D.Miss.1978) (emphasis added).[2]

Citing *Escott v. BarChris Construction Corp.*, 283 F.Supp. 643 (S.D.N.Y.1968), Plaintiffs allude to a duty on the part of attorneys to make "a reasonable independent investigation to detect and correct false or misleading materials." *Felts v. National Account Systems Association, Inc.*, 469 F.Supp. at 67, *citing Escott v. BarChris Construction Corp.*, 283 F.Supp. 643.

*Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) were held to deficient.

---

1. To the extent Plaintiffs are alleging that Defendant had a statutory or other duty to discover omissions and misrepresentations in the financial statements of Octagon Properties, Ltd. and a related duty to disclose same and breached those duties by "negligent nonfeasance," Plaintiffs' § 10(b) claims must fail for the same reason that plaintiffs' claims in *Ernst & Ernst v.*

2. Quoted in Plaintiffs' Brief at p. 10 and incorrectly attributed in full to *Securities and Exchange Commission v. Frank,* 388 F.2d 486, 489 (2nd Cir.1968).

The *BarChris* case dealt exclusively with the civil liability of various defendants under Section 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k(a), for an allegedly false registration statement. The issue of whether the underwriters' counsel and a director's counsel had made reasonable investigations of the truth of statements in the prospectus was addressed only in the context of whether the underwriters and the director had met their statutory affirmative defense (of a reasonable ground to believe and actual belief of the truth of the statements and that there was no material omission, after reasonable investigation *see* 15 U.S.C. § 77k(b)(3)) by reliance on their counsel's investigations, which were inadequate or non-existent. *See* 283 F.Supp. at 697. Plaintiffs have not alleged a Section 11 violation. Any duties of an attorney implicit under that section or the discharge of which is necessary to establish an attorney's affirmative defense to an action under that section are not pertinent to Plaintiffs' claims. *See Ernst & Ernst v. Hochfelder*, 425 U.S. at 207–08 & n. 26, 96 S.Ct. at 1387–88 & n. 26, 47 L.Ed.2d at 685 & n. 26. *Accord, Dirks v. S.E.C.*, 463 U.S. 646, 653–64, 103 S.Ct. 3255, 3260–61, 77 L.Ed.2d 911, 921–28 (1983); *Chiarella v. United States*, 445 U.S. 222, 227–35, 100 S.Ct. 1108, 1114–18, 63 L.Ed.2d 348, 356–61 (1980); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir.1986) (a duty of disclosure necessary to impose liability under Section 10(b) for nondisclosure must come from a fiduciary relation outside securities law).

*Securities and Exchange Commission v. Frank*, 388 F.2d 486 (2nd Cir.1968) was an appeal from an order issuing a temporary injunction against an attorney in connection with a civil enforcement action by the SEC alleging violations of Section 17(a) of the Securities Act of 1933 and of Section 10(b) of the Securities Exchange Act of 1934. The court's statements therein are dictum, given the disposition of the appeal, and in any event appear directed at the attorney's potential liability for aiding and abetting his client's fraud rather than a duty to disclose it. Moreover, to the extent a mere failure to exercise due care to discover the fraud of another may have supported injunctive relief in SEC actions in the Second Circuit before *Aaron v. S.E.C.*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), that is no longer the case.

In the *Felts* case the court relied on the *Frank* and *BarChris* cases to conclude that an attorney had a special duty of diligent investigation and disclosure *which he voluntarily assumed with respect to the purchasers of the securities* inasmuch as it was foreseeable and known to him that the purchasers would rely upon him. *See* 469 F.Supp. at 67–68. In the present case, Defendant did not sign or certify the Offering Memorandum or the financial statements contained therein or undertake to opine on or evaluate the accuracy of the financial statements. Thus, there was no voluntary assumption of a special duty of investigation and disclosure and it was unforeseeable as a matter of law that Plaintiffs would rely upon Defendant's failure to comment as an assertion of the accuracy of the financial statements.

It is also to be noted that the court in the *Felts* case concluded that the attorney was liable as an aider and abettor, participant, controlling person and co-conspirator of the issue for violations of federal and state securities laws and common law fraud. *See* 469 F.Supp. at 66–68. The court did not consider whether the attorney had a duty to disclose which would warrant the imposition of primary liability for nondisclosure of the issuer's fraud.

█ Having reviewed not only the cases cited by Plaintiffs but a number of other cases involving claims for liability under Section 10(b) against attorneys, *see e.g., Cronin v. Midwestern Oklahoma Development Authority*, 619 F.2d 856, 862 (10th Cir.1980); *S.E.C. v. Spectrum, Ltd.*, 489 F.2d 535 (2nd Cir.1973); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F.Supp. 1362, 1667–68 (D.Conn.1987); *Bush v. Rewald*, 619 F.Supp. 585 (D.Haw.1985); *Morgan v. Prudential Group, Inc.*, 527 F.Supp. 957 (S.D.N.Y.1981), *aff'd*, 729 F.2d 1443 (2nd Cir. 1983), the Court is satisfied that an attorney for an issuer owes no special duty of

disclosure to securities purchasers unless he prepares a legal document or signed opinion letter which "represent[s] explicitly the legal opinion of the attorney preparing them," for the benefit of the purchasers. *Abell v. Potomac Insurance Co.*, 858 F.2d at 1124–25.

## B. Causation

Defendant maintains that Plaintiffs' allegations are insufficient to show both loss causation and transaction causation, citing, *inter alia, First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775 (7th Cir.1988) and *Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir. 1988). In particular, Defendant points out that many of the alleged diversions of funds and other misdeeds had occurred prior to the exchange offering and, by virtue of Plaintiffs' relationship with Octagon Properties, Ltd., had therefore already caused the loss about which Plaintiffs are now complaining. What is more important, Defendant asserts, is that the only specific misdeeds which Plaintiffs allege by date, time and place, occurred after May of 1986. Since, according to Defendant, the last date Plaintiffs could have accepted the exchange offer was May 31, 1986, any loss resulting therefrom occurred after Plaintiffs purchased. Defendant suggests that it couldn't disclose what had not yet occurred.

The diversion of funds itemized in the Second through Fifth Causes of Action in Plaintiffs' Amended Petition took place after the Offering Memorandum was prepared and after the offering period closed (unless extended by the issuer) and thus could not have been disclosed by Defendant. Nondisclosure of *these* diversions could not have caused the economic harm of which Plaintiffs complain in connection with the exchange offer. To establish loss causation, a plaintiff must demonstrate that a defendant's fraudulent conduct touches upon the reasons for the economic harm or the decline in the value of the

investment. *See, e.g., Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785 (11th Cir.1988); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2nd Cir.1985); *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). *See also First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775, 778 (7th Cir.1988) (loss causation in aiding and abetting context). To put it another way, Defendant's failure to disclose prior diversions of funds by Octagon and its officers or directors could not in any manner *cause* losses to the value of Plaintiffs' stock resulting from diversions that occurred *after* the exchange. Subsequent diversions of funds were supervening events which may have caused *additional* decline in the value of Plaintiffs' stock but which cannot have caused any economic loss to Plaintiffs at the time the transaction took place. *Accord, First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d at 778–79.

In other causes of action, however, Plaintiffs have alleged diversions of funds which occurred *prior* to the date of the Offering Memorandum. It is reasonably inferable from Plaintiffs' allegations in paragraph 66 that Plaintiffs are alleging that the financial statements failed to disclose these diversions. Plaintiffs have further alleged that had Defendant assured that all necessary information was obtained, was correct and was disclosed in the documents, "Plaintiffs would not have invested the assets they did with Octagon Properties, and would not have lost their investments thereby." The Court cannot say as a matter of law that the alleged omissions of or failure to disclose prior diversions in the financial statements did not cause Plaintiffs to exchange their partnership interests for stock or that the nondisclosure did not touch upon the reason the stock was worth less than represented.[3]

---

3. Defendant suggests that any losses due to the prior diversions had already caused a loss in the value of Plaintiffs' partnership interests *before* they exchanged them for stock pursuant to the exchange offer. *See* Defendant's Brief at p. 10. However, the exchange offer required holders of limited partnership who exchanged their partnership interests for common stock in Octa-

It is true that Plaintiffs have not in their pleading explained precisely how the alleged omissions touched upon the reason for a loss in their investment upon exchange of their limited partnership interests for stock in Octagon. However, neither this Court nor the Tenth Circuit Court of Appeals have ever required the affirmative pleading of the factual basis for both transaction causation and loss causation. Nevertheless, if a plaintiff's pleading revealed facts showing that either transaction causation or loss causation could not be established or if the facts alleged conclusively negated the existence of either, the Court would dismiss the cause of action for failure to state a claim on which relief could be granted. But that is not the case here. The Court cannot say on the basis of pleading that Plaintiffs can prove no set of facts establishing both transaction causation and loss causation.

### C. Reliance

▮▮▮▮ Defendant points to language in the Offering Memorandum, much of which is quoted above, and asserts that in the face of such disclosures of who prepared the financial statements, their unaudited status, etc. and of the limits of Defendant's undertaking, Plaintiffs' reasonable reliance on Defendant's failure to disclose misrepresentations and omissions in the offering memorandum is precluded as a matter of law. In an omissions case such as this, reliance is presumed, *see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, 761–62 (1972), but may be conclusively rebutted by facts showing that the plaintiff did not in fact rely or that the plaintiff's reliance was unreasonable as a matter of law. *See, e.g., Shores v. Sklar*, 647 F.2d 462, 468 (5th Cir.1981) ("When the *Ute* presumption attaches the defendant

may rebut it by showing that the plaintiff did not rely on the defendant's duty to disclose"), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), *cited in Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1519 (10th Cir.1983). If such facts appear on the face of the pleading or documents attached thereto, dismissal would be appropriate. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1969) (dismissal pursuant to Rule 12(b)(6) is appropriate when the Complaint and/or exhibits thereto show either that the claim is defective or the existence of an effective affirmative defense). In the face of the statements in the Offering Memorandum that the financial statements were the sole responsibility of Octagon and were unaudited, and disclosures concerning the limited role of Defendant in preparing or evaluating statements made in the Offering Memorandum, the Court agrees with Defendant that any reliance by Plaintiffs on Defendant's duty to disclose inaccuracies, misrepresentations or omissions of Octagon in information it supplied is unreasonable as a matter of law.

### D. Aiding and Abetting

Defendant maintains that Plaintiffs have "failed to properly plead either the first or third elements of" a claim for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934. Yet Defendant's arguments are addressed to the second and third elements of an aider and abettor claim and indeed almost exclusively to the second element.[4] The Court assumes that it is the pleading of *these* elements which Defendant contends is inadequate. Defendant apparently contends that Plaintiffs' allegations are insufficient because they fail to allege facts showing the existence of these elements or, even if

---

gon Properties, Ltd. to *also* purchase additional shares of stock for cash. *See* Offering Memorandum at p. (i). Thus, nondisclosure of prior diversions which may have already caused a loss to the value of partnership interests could cause the realization of additional losses upon exchange plus purchase.

**4.** The essential elements of a claim for aider and abettor liability for violations of Section

10(b) are 1) a primary violation of that Section by another; 2) knowledge of the violation by the alleged aider and abettor; and 3) substantial assistance by the aider and abettor. *See Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916, 925 (W.D.Okla.1985), *aff'd*, 813 F.2d 296 (10th Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987).

they have met that burden, they have failed to plead these facts with the particularity required by Rule 9(b), F.R.Civ.P.[5]

■ The Tenth Circuit has held that "one who aids and abets a fraudulent scheme may be held accountable even though his assistance consists of mere silence or inaction." *Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731, 740 (10th Cir.1974). Most courts have held that in the absence of a duty to speak, mere silence or inaction on the part of the alleged aider and abettor constitutes substantial assistance only if it was designed intentionally to aid the primary fraud, *see, e.g., Armstrong v. McAlpin*, 699 F.2d 79, 91 (2nd Cir.1983), *citing ITT v. Cornfeld*, 619 F.2d 909, 925–27 (2nd Cir.1980), or if the participation is of the "high conscious intent variety." *See Abell Potomac Insurance Co.*, 858 F.2d at 1126–27, *quoting Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir.1975).[6]

■ In this case Plaintiffs have alleged alternative mental states of Defendant— that Defendant "acted either with knowledge of the misstatements contained [in the financial statements], or with such reckless disregard ... as amounts in law to malicious, intentional and knowing conduct...." Amended Complaint at ¶ 73, in failing to disclose misrepresentations or omissions in them, *see* Amended Complaint at ¶¶ 67 & 68. The former is sufficient, for pleading purposes, of establishing knowledge of the "high conscious intent variety," particularly when this allegation is considered in conjunction with the allegation that Defendant was paid an amount of compensation which exceeded what would

be fair for the degree of inquiry conducted by Defendant, *see* Amended Complaint at ¶ 71, and when it is recalled that Rule 9(b) permits intent and knowledge to be averred generally. In short, the Court cannot conclude that the "alchemy" of the alleged level of Defendant's assistance, combined with the alleged level of Defendant's knowledge, *see Abell v. Potomac, Insurance Co.*, 858 F.2d at 1127, is such that Plaintiffs can prove no set of facts entitling them to relief on this claim. Nor, in the Court's view, are Plaintiffs' allegations of the manner in which Defendant assisted the alleged fraud and when the assisting activity took place insufficiently particular to satisfy Rule 9(b).

### E. Statute of Limitations

Defendant asserts that Plaintiffs have not sufficiently alleged compliance with the two-year statute of limitations, Okla.Stat. title 12, § 95 (Third), applicable to actions under Section 10(b) brought in Oklahoma, *see Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916 (W.D.Okla.1985), *aff'd*, 813 F.2d 296 (10th Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987). Again, Defendant urges that this is due to Plaintiffs' failure to allege the circumstances of the discovery and why the alleged fraud was not earlier discovered. Again, the Court rejects the stringent pleading requirement urged by Defendant. Plaintiffs have adequately alleged compliance with this statute.

### III. *Violation of Section 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a)*

Defendant first suggests that Section 17(a) does not give rise to a private right of

---

**5.** This Court has previously held that claims for secondary liability for violation of securities laws must be pleaded with particularity. *See, e.g., Eastwood v. National Bank of Commerce, Altus, Oklahoma*, 673 F.Supp. 1068, 1080 (W.D.Okl.1987), *citing, inter alia, Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 & n. 2 (10th Cir.1986).

**6.** Defendant does not dispute that one having no duty of disclosure may be liable as an aider or abettor if his participation is of the "high conscious intent" variety. See Defendant's Brief at p. 5. Rather, Defendant asserts that to satisfy

Rule 9(b), facts must be alleged to show the alleged abettor's means of knowledge and that the alleged abettor has thrown in his lot with the primary violators and intended either to violate the securities laws or that the fraudulent scheme succeed, citing *Abell v. Potomac Insurance Co.*, 858 F.2d at 1126–27; *First Interstate Bank of Nevada, N.A. v. Chapman & Cutler*, 837 F.2d 775, 778–80 (7th Cir.1988); *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496–97 (7th Cir.1986); *Farlow v. Peat Marwick Mitchell & Co.*, 666 F.Supp. 1500, 1506–07 (W.D.Okla.1987).

action. However, Defendant asserts that even if there is a private cause of action under that Section, Plaintiffs have not stated such a claim. Defendant points out that the language in Section 17(a), like that in Section 12, limits liability to offerors and sellers. Thus, Defendant asserts that Plaintiffs have failed to state a claim under Section 17(a) for the same reason that they have failed to state a claim under Section 12(2): they have failed to allege facts showing that Defendant was a seller (or offeror) as defined in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

This Court has previously declined to imply a private cause of action under Section 17(a). *See* Order, *Citizens State Bank v. FDIC*, 639 F.Supp. 758, 759–60 (W.D.Okla. 1986); *Farlow v. Peat, Marwick, Mitchell & Co.*, No. 86–0487–R (now 86–0487–P) (W.D.Okla. Dec. 10, 1986) at pp. 16–17. The judges in this district are not, however, in agreement on this issue. *See Richey v. Westinghouse Credit Corp.*, 667 F.Supp. 752, 756–57 (W.D.Okla.1986); *Geller v. Prudential Bache Securities, Inc.*, 591 F.Supp. 27, 28 (W.D. Okla.1983) (recognizing a private cause of action under Section 17(a)). The Tenth Circuit has not addressed the issue, but has expressed "considerable doubt" as to whether a private right of action exists under Section 17(a), *see State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n. 1 (10th Cir., *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981), and the United States Supreme Court has on five occasions declined to decide the issue. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215, 220 n. 9 (1985); *Herman & Maclean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548, 553 n. 2 (1983); *Aaron v. S.E.C.*, 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611, 621 (1980); *International Brotherhood of Teamsters Chauffeurs, Warehousemen and Helpers of America v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808, 815 n. 9 (1979); *Blue Chip Stamps v. Manor Drug Store*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539, 548 n. 6 (1975). All of the circuit courts, with the exception of one, which have directly addressed the issue, now hold that no private right of action exists under Section 17(a). *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942–43 (7th Cir.1989); *Newcome v. Esrey*, 862 F.2d 1099, 1101 (4th Cir.1988); *Rodriguez De Quijas v. Shearson/Lehman Brothers, Inc.*, 845 F.2d 1296, 1297 n. 1 (5th Cir.1988); *Currie v. Cayman Resources Corp.*, 835 F.2d 780, 785 (11th Cir. 1988); *Krause v. Perryman*, 827 F.2d 346, 349 (8th Cir.1987); *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987) (*en banc*). Three of these circuit courts have reversed their positions on the issue, overruling their prior decisions of *Mosher v. Kane*, 784 F.2d 1385 (9th Cir.1986); *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981); *Daniel v. International Brotherhood of Chauffeurs, Warehousemen and Helpers of America Teamsters*, 561 F.2d 1223, 1244–46 (7th Cir.1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Newman v. Prior*, 518 F.2d 97, 99 (4th Cir.1975). The Second Circuit has held that a private cause of action exists under Section 17(a), *see Kirshner v. United States*, 603 F.2d 234, 241 (2nd Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), but it appears that that circuit may be amenable to re-examination of the question. *See Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2nd Cir.1985).

 In the face of almost unanimity among the circuit courts which have considered the issue and the excellent analysis by the Ninth Circuit in *In re Washington Public Power Supply System Securities Litigation*, which the court finds particularly persuasive, this Court reaffirms its previous conclusion that no private cause of action lies for violations of Section 17(a) of the Securities Act of 1933.

Even if the Tenth Circuit were to conclude that a private right of action should be implied under Section 17(a), Plaintiffs' claim thereunder fail. Section 17(a), as Defendant notes, applies to those who offer or

sell securities. "Offer" and "sell" have the same definitions for purposes of Section 17(a) as they do for Section 12. *See* 15 U.S.C. § 77b(3). Accordingly, the Supreme Court's explication of the application of these definitions in *Pinter v. Dahl* is equally pertinent when violations of Section 17(a) are alleged. Plaintiffs have failed to allege facts showing that Defendant was an offeror or seller for purposes of Section 17(a).

### IV. *Oklahoma Securities Act Claims*

#### A. Primary Liability

 Noting that Plaintiffs have not specifically alleged under which provisions of the Oklahoma Securities Act they are seeking relief, Defendant first argues that Plaintiffs have failed to allege facts showing that Defendant sold or solicited the sale of securities, an argument obviously directed to a claim for primary liability under Section 408(a)(1) or (2) of the Oklahoma Securities Act, Okla.Stat. title 71, § 408(a)(1) & (2). The Court agrees. The definitions of "offer" and "sell" in the Oklahoma Securities Act are in relevant part identical to the definitions of these terms under the Securities Act of 1933. *Compare* Okla.Stat. title 71, § 2(13) & (14) *with* 15 U.S.C. § 77b(3). Moreover, the Oklahoma Securities Act is to be interpreted in a manner consistent with federal statutes and regulations. *See* Okla.Stat. title 71, § 501. Accordingly, the Court is of the opinion that the Oklahoma Supreme Court would interpret Section 408(a) to limit the class of defendants who may be primarily liable thereunder to the same class of defendants who may be primarily liable under Section 12(1) delimited by the United States Supreme Court in *Pinter v. Dahl*. Therefore, for the same reasons that Plaintiffs have failed to state claims against this Defendant for primary liability under Section 12, *see* above, Plaintiffs have also failed to state claims for primary liability under Section 408(a) of the Oklahoma Securities Act.

#### B. Statute of Limitations

Defendant asserts that Plaintiffs have failed to affirmatively allege compliance with the two-year statute of limitations applicable to Plaintiffs' Section 408(a)(2) claims. Again, as with respect to claims under Section 12(2), Defendant suggests that Plaintiffs must allege the circumstances surrounding their discovery of the alleged fraud, why they did not earlier discover it and what diligence they used in attempting to unveil the fraud. Defendant cites and this Court has located no Oklahoma cases or federal decisions projecting Oklahoma law adopting or employing the stringent pleading requirement urged by Defendant.

#### C. Secondary Liability

Defendant asserts that Plaintiffs' claims under Section 408(b) of the Oklahoma Securities Act, for material participation in or aiding a violation by another of Section 408(a) of the Oklahoma Securities Act, are, to the extent Plaintiffs are alleging such claims, deficient for the same reason that Plaintiffs' aider and abettor claim under the federal securities law is deficient. But since the Court has determined that Plaintiffs have adequately pleaded a claim against Defendant for aiding and abetting a violation of Section 10(b), *see supra*, and for the further reason that neither conscious intent or recklessness is a necessary element of liability under Section 408(a)(2) or (b),[7] Defendant's argument must be rejected.

### V. *Fraud, Actual or Constructive, and Deceit*

Defendant asserts that Plaintiffs' common law fraud claims against it are deficient for the same reasons that the § 10(b) claims are deficient, that is, they fail to comply with Rule 9(b) and fail to allege a duty to disclose and to properly plead causation and reliance. Plaintiffs contend that they have adequately alleged either actual fraud or deceit by Defendant, as defined in Okla.Stat. tit. 15, § 58 and Okla.Stat. tit.

---

7. Lack of knowledge is an affirmative defense. *See* Okla.Stat. title 408(a)(2) and (b). *See also* 62 ALR 3d 252, 255 (1975) (observing that the Uniform Securities Act, from which the Okla-homa act is in large part derived, 'makes the element of knowledge or, more aptly, the lack thereof, an affirmative defense to participant or aider liability).

76, §§ 2 & 3, respectively, or at least constructive fraud, as defined in Okla.Stat. title 15, § 59.

■■■■ Constructive fraud requires the existence of a fiduciary duty, or a duty based upon a confidential relationship. *See, e.g., Uptegraft v. Dome Petroleum Corp.,* 764 P.2d 1350, 1353–54 (Okla.1988); *Faulkenberry v. Kansas City Southern Railway Co.,* 602 P.2d 203, 206 (Okla.1979). No facts establishing or from which such a legally cognizable duty may be inferred have been alleged by Plaintiffs. Even if such a duty existed, Defendant's nondisclosure could not have misled Plaintiffs to their detriment, *see* Okla.Stat. title 15, § 59(1), for the same reason that reasonable reliance is conclusively rebutted by statements in the Offering Memorandum. Plaintiffs could not have reasonably understood from Defendant's silence or nondisclosure that Defendant was vouching for the truth of, of placing its imprimatur on, the financial statements and thus could not have been misled to their detriment thereby.

■■■■ Actual fraud requires reliance regardless of the nature of the act or statement constituting a misrepresentation. *See, e.g., Tice v. Tice,* 672 P.2d 1168, 1171 (Okla.1983); *D & H Co., Inc. v. Shultz,* 579 P.2d 821, 824 (Okla.1978). The character of the representations may be considered in determining whether they were relied upon. *Varn v. Maloney,* 516 P.2d 1328, 1332 (Okla.1973). The alleged misrepresentations need not be the sole inducement which causes a party to take action, but they must be that without which the party would not have acted. *Tice v. Tice,* 672 P.2d at 1171. Indeed the Oklahoma Supreme Court has said that the representations must have been of such a nature and made under such circumstances that the injured party had a right to rely on them and that the reliance must be justifiable. *State ex rel. Southwestern Bell Tel. Co. v. Brown,* 519 P.2d 491, 495 (Okla.1974). Therefore, for the same reason that this element of Plaintiffs' § 10(b) claim is negated by the Offering Memorandum it is negated as well for purposes of this claim.

Defendant does not address Plaintiffs' assertion that they have stated a claim for deceit. Consequently, the Court does not consider Defendant's motion as directed to a claim based upon that theory.

### VI. *Legal Malpractice*

■■■■ Defendant asserts that that Plaintiffs have failed to state a claim for legal malpractice or attorney negligence because such an action is maintainable under Oklahoma law only for an injurious breach of a professional duty which a lawyer owes to his *client.* Defendant cites *Birchfield v. Harrod,* 640 P.2d 1003 (Okla. App.1982) and *Allred v. Rabon,* 572 P.2d 979 (Okla.1977). While this is true as a general rule, Oklahoma has also recognized a negligence cause of action for third parties against an attorney who knows that his legal opinion will be circulated and relied upon by third parties who thus may foreseeably be injured as a result of such reliance, if he fails to exercise ordinary care to prevent such injury. *See Bradford Securities Processing Services, Inc. v. Plaza Bank and Trust,* 653 P.2d 188 (Okla. 1982). But as stated above, the Offering Memorandum attached to Plaintiffs' Amended Complaint shows that Defendant did not render an opinion concerning the financial statements of or condition of Octagon Properties, Ltd. nor did it sign or certify the Offering Memorandum. Defendant's limited evaluative role with respect to the offering was clearly stated in the Offering Memorandum. It was unforeseeable as a matter of law that Plaintiffs or persons in their position would rely on Defendant's failure to comment on the accuracy of the financial statements as an assertion that the financial statements accurately disclosed the financial condition of Octagon Properties, Ltd.

### VII. *Breach of Fiduciary Duty*

■■■ Defendant asserts and the Court agrees that Plaintiffs have failed to allege facts which demonstrate that a fiduciary relationship or other relationship of trust and confidence existed between Plaintiffs and Defendant. *See Windon Third Oil and Gas Drilling Partnership v. FDIC,* 805 F.2d at 347. The Offering Memorandum shows that no attorney-client relation-

ship existed and, contrary to Plaintiffs' assertions, there is no specific duty to the public which the securities laws impose upon attorneys. *See, e.g., Abell v. Potomac Insurance Co.*, 858 F.2d at 1133; *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d at 496. This claim must also be dismissed.

### Conclusion

For the foregoing reasons the motion of Defendant Andrews Davis Legg Bixler Milsten & Murrah, Inc. to dismiss Plaintiff's Amended Complaint is granted as to Plaintiffs' claims against Defendant for violations of Section 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1) & (2); primary violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); primary violations of the Oklahoma Securities Act, Okla.Stat. title 71, § 408(a)(1) & (2); actual fraud, Okla.Stat. title 15, § 58; constructive fraud, Okla.Stat. title 15, § 59; legal malpractice; and breach of a fiduciary duty, and said claims are dismissed. Defendant's motion to dismiss Plaintiffs' claims against it for secondary liability for violations of Section 10(b) of the Securities Exchange Act and of the Oklahoma Securities Act, *see* Okla.Stat. title 71, § 408(b), and for the tort of deceit is denied.

Dismissal of Plaintiffs' claims in this Order shall be without prejudice. Plaintiffs are granted leave to amend their Complaint to cure those defects which are subject to being cured by additional factual allegations, if they can do so, within fifteen (15) days of the date of this Order. Dismissal of claims as to which amendment is not attempted or is unavailing shall be or become dismissal with prejudice upon the lapse of the period for amendment as to claims for which amendment is not attempted, and upon dismissal in a subsequent Order, as to claims for which amendment is unavailing.

IT IS SO ORDERED.