962 F.2d 10
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
D.C. PERRY, Plaintiff-Appellant,
v.
EASTMAN KODAK COMPANY, Defendant-Appellee.
 No. 91-2192.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 13, 1992.
Decided May 15, 1992.
 
 Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 In 1986, and 1987, the plaintiff, D.C. Perry, invested in two companies that were attempting to market a drug known as ribavirin as an approved treatment for the AIDS virus. After Perry lost money on his investments, he filed suit against various entities, alleging numerous securities violations. Most of these claims have been transferred to the Southern District of New York, but the claim against Eastman Kodak was handled in the Southern District of Indiana. The district court granted Eastman Kodak's motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court order is attached as appendix A to this order, and we AFFIRM that order.
 
 APPENDIX A
 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF INDIANA
 INDIANAPOLIS DIVISION
 
 2
 D.C. PERRY, Plaintiff,
 
 
 3
 vs.
 
 
 4
 EASTMAN KODAK COMPANY, Defendant.
 
 
 5
 CAUSE NO. IP 87-1023-C.
 
 
 6
 April 22, 1991.
 
 ORDER ON KODAK'S MOTION TO DISMISS
 
 7
 This cause comes before the Court on the defendant's motion to dismiss for failure to state a claim upon which relief can be granted.[1] For the reasons set forth below, the Court GRANTS the motion to dismiss.
 
 I. Background
 
 8
 Plaintiff Perry is an individual who purchased and sold significant quantities of ICN Pharmaceuticals and Viratek stock in 1986 and 1987. At the time of his investments, ICN and Viratek were attempting to test and market a drug known as ribavirin (trade name Virazole) as an approved treatment for the AIDS virus. Subsequent to these investments, Virazole was denied approval by the FDA for use in the treatment of AIDS which resulted in a substantial drop in the value of the stocks of ICN and Viratek. After losing money in these stock transactions, Perry filed the present action against a number of defendants, including ICN, Viratek, and the stock brokerage firms with whom he dealt. The claims against these defendants have been transferred by this Court to the Southern District of New York.
 
 
 9
 The only remaining claim before this Court is against Eastman Kodak. On July 27, 1989, this Court dismissed Counts Two, Four, Five, Six and Seven of the original complaint and granted the plaintiff leave to amend Counts One and Three as to Eastman Kodak. The Court found that the plaintiff's complaint on these counts were not stated with sufficient particularity and permitted limited expedited discovery to enable the plaintiff to amend these claims.
 
 
 10
 The plaintiff has filed his amended complaint which consists of three counts. In Count I, Perry alleges that Kodak violated Sections 10(b) and 9 of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78j(b) and 78i. In Count II, Perry alleges that Kodak violated Section 23-2-1-12 of the Indiana Securities Act. In Count III, Perry alleges that Kodak committed common law fraud. Kodak filed a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted in response to the amended complaint.
 
 
 11
 The amended complaint consists of numerous contentions and allegations. The central allegations are as follows:
 
 
 12
 1. Beginning in July, 1986, Perry purchased stock in ICN Pharmaceuticals, Inc. and its subsidiary, Viratek, Inc., and by the end of February, 1987, Perry held 30,000 shares of ICN stock and 4,500 shares of Viratek stock.
 
 
 13
 2. On March 23, 1987, ICN announced its plans to buy back up to three million shares of its outstanding stock, and Perry purchased an additional 1,000 shares of Viratek stock.
 
 
 14
 3. On March 24, 1987, Kodak announced its intention to sell all of its ICN stock allegedly stating that its reason for selling was its objectives had been met.
 
 
 15
 4. On March 25, 1987, ICN announced that Kodak had confirmed continuing confidence in the progress of a joint research venture with ICN, the Nucleic Acid Research Institute ("NARI") and that ICN and Kodak were discussing a private sale of stock to ICN.
 
 
 16
 5. Beginning on April 1, 1987 and through April 9, 1987, Kodak sold all of its ICN shares.
 
 
 17
 6. On April 9, 1987, in response to declines in the market value of ICN stock, Perry's broker sold 4,500 shares of Perry's ICN stock.
 
 
 18
 7. On April 15, 1987, ICN announced that the FDA had decided not to approve ICN's product, ribavirin, for use in treatment of the AIDS virus. Consequently, the market price of ICN and Viratek stock dropped significantly. The balance of Perry's Viratek and ICN stock was sold by his broker in a margin call that same day.
 
 
 19
 8. Beginning in late May, and through early June, 1987, Kodak sold all of its Viratek stock.
 
 
 20
 9. Perry also alleges that during this time: Kodak was a partner with ICN in a joint research program, NARI; in early 1986, Kodak agreed to fund the first phase of AIDS human clinical trials conducted by ICN; from 1984 through 1987, Kodak manufactured ribavirin for sale to ICN; and that as a result of these relationships Kodak had or may have had material non-public information regarding ICN, Viratek or ribavirin.
 
 
 21
 Perry claims that these allegations support valid claims under Sections 10(b) and 9 of the 1934 Act. First, Perry alleges that Kodak's March 24 press release was a false or misleading statement in violation of 10(b). Second, Perry claims that Kodak aided and abetted primary securities violations by ICN, Viratek, and others. Perry claims that Kodak substantially assisted these parties by lending its reputation and financial support to NARI and ICN's AIDS trials and by failing to disclose primary violations that it must have known about. Third, Perry alleges that Kodak's sales of ICN and Viratek stock constitute insider trading, because Kodak was either and "insider" or "tippee" and must have had material non-public information regarding ICN and ribavirin. Finally, Perry alleges that Kodak's March 24 statement violates Section 9 of the 1934 Act, because it was part of efforts to manipulate upwards the market price of ICN and Viratek stock. Perry also claims that these same allegations support his Count II Indiana blue sky claim and his Count III common law fraud claim. The Court will discuss each of these counts separately.
 
 II. Count I: Federal Claims
 A. The Section 10(b) False Statement Claim
 
 22
 To recover under a § 10(b) or Rule 10b-5 cause of action, a plaintiff must first prove that the defendant violated the statute or the rule. To do so, a plaintiff must establish the following:
 
 
 23
 (1) that defendants intentionally or recklessly;
 
 
 24
 (2) misrepresented, or omitted to disclose despite a duty to disclose;
 
 
 25
 (3) material facts;
 
 
 26
 (4) in connection with the purchase or sale of a security.
 
 
 27
 Bastian v. Petren Resources Corp., 681 F.Supp. 530, 533 (N.D.Ill.1988). Perry must then establish that the alleged violation was the direct and proximate cause of his securities transactions and the losses he allegedly suffered. This requires allegations that show (1) justifiable reliance on deceptive statements which result in an investment decision; and (2) a causal connection between the statements and Perry's economic loss. LHLC Corp. v. Cluett, Peabody & Co., 842 F.2d 928, 931-32 (7th Cir.1988), cert. denied, 488 U.S. 926 (1988).
 
 
 28
 "Reliance is an element of a Rule 10b-5 cause of action. Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." Basic Inc. v. Levinson, 485 U.S. 224, 243 (1987). The problem in this cause is that Perry has not alleged any direct reliance on Kodak's press release in making any of his stock transactions. All of his stock purchases occurred prior to the release. All of his sales were involuntary margin calls to cover declines in the market price of ICN and Viratek stock. Perry has alleged no direct connection between his purchases and sales and Kodak's statement.
 
 
 29
 Instead, Perry indicates that his reliance was based on the integrity of the market-price of the stocks. The basis for this belief comes from the fraud-on-the-market theory recognized by the U.S. Supreme Court in Basic Inc. v. Levinson. Fraud-on-the-market is a theory which recognizes that a materially false statement or omission may be relied upon in the process of valuing shares. The false statement or omission causes the price of the stock to deviate from what its intrinsic value should be. As a result, investors could be hurt by false statements even if they do not rely upon the actual false statements or omissions.
 
 
 30
 The fraud-on-the-market theory replaces the reliance on a misleading statement with reliance on the integrity of the market-price of the stock. Therefore, Perry must allege reliance on the market-price when either making a purchase or a sale of a stock. As stated before, all purchases were made prior to any possible misleading statement by Kodak. As a result, the alleged misleading statement could not have affected the integrity of the market-price of the stocks at the time Perry purchased them.
 
 
 31
 Regarding the sale of the stocks, Perry alleges that the stocks were sold because of significant declines in ICN's and Viratek's market prices. Perry also alleges that Kodak attempted to artificially raise the market price of these stocks through its misrepresentations. The only possible way in which Perry could have relied to his detriment on an artificially raised or maintained market-price would have been to continue holding his stock when he could have sold at the higher price if he had he known all the facts.
 
 
 32
 Such a reliance is barred by the adoption of the Birnbaum rule in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975). "Three principal classes of potential plaintiffs are presently barred by the Birnbaum rule ... [including] actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material." Blue Chip Stamps, at 737-738. A plaintiff simply has no claim for sales that he or she would have made but for a misrepresentation or omission.
 
 
 33
 Perry claims that the Birnbaum rule does not apply in this case because he sold his stocks. Nowhere does Perry allege that these sales were in connection with Kodak's statements but rather Perry argues that if he had known what Kodak allegedly knew, he would have sold somewhat sooner at a more favorable price. This is the type of claim that is expressly barred by the Birnbaum rule. As a result, Perry has not shown a justifiable reliance on Kodak's statement through either direct reliance or through the fraud-on-the-market theory, and therefore Perry's Section 10(b) false statement claim must fail.
 
 
 34
 An independent ground for the same result is that there is no causal connection between Kodak's statements and Perry's economic loss. "What securities lawyers call 'loss causation' is the standard common law fraud rule, merely borrowed for use in federal securities fraud cases. It is more fundamental still; it is an instance of the common law's universal requirement that the tort plaintiff prove causation." Bastian v. Petren Resources Corp., 892 F.2d 680, 683-84 (7th Cir.1990).
 
 
 35
 Perry's loss came from a sudden decline in the value of his ICN and Viratek stock. In order to show loss causation, Perry must be able to show that Kodak's statement that it intended to sell its ICN and Viratek stock caused the declines in price. It is beyond dispute that the FDA's rejection of ribavirin for use in AIDS treatment was the primary reason behind the decline in the stock prices not Kodak's statement.
 
 
 36
 Perry apparently argues that if Kodak had not made an allegedly misleading statement but publicly disclosed the information supposedly known by Kodak that ribavirin would not be approved by the FDA, Perry could have sold his stock before the market-price dropped. This argument is contrived and ignores the market reality that if such information existed and was disclosed, it would simply mean that the stock prices would have dropped that much sooner. But such speculation aside, Perry has failed to show that Kodak's statement caused his economic loss in any way.
 
 
 37
 Thus, Perry cannot show justifiable reliance on Kodak's statement or a causal connection between the statement and Perry's economic loss, Perry's Section 10(b) false statement claim must be dismissed for failure to state a claim upon which relief can be granted.
 
 
 38
 B. The Section 10(b) Aiding and Abetting Claim
 
 
 39
 Perry claims that Kodak aided and abetted primary securities violations by ICN, Viratek, SPI Pharmaceuticals, Inc. and Milan Panic (the ICN Parties). Perry claims that Kodak substantially assisted these parties by lending its reputation and financial support to NARI and ICN's AIDS trials and by failing to disclose primary violations of which it must have known. To state a claim for "aiding and abetting" a securities violator, the plaintiff must allege:
 
 
 40
 1. the existence of a primary violator;
 
 
 41
 2. that the aider and abetter acted with the same mental state as required for primary liability;
 
 
 42
 3. that the aider and abetter substantially assisted the violation; and
 
 
 43
 4. that the assistance was a substantial factor in causing the resulting harm.
 
 
 44
 Board of Trustees of the Firefighters Pension Fund v. Liberty Group, 708 F.Supp. 1504, 1506 (N.D.Ill.1989).
 
 
 45
 Perry's Amended Complaint does not identify with any particularity the primary violations on which Perry's aiding and abetting claims are supposedly based. The only acts by ICN parties alleged in the Amended Complaint occurring after November 28, 1986 (the date upon which Kodak's aiding and abetting liability is alleged to arise), are statements or announcements by ICN. These allegations fail to state any aiding and abetting claims against Kodak.
 
 
 46
 Aiding and abetting liability under Section 10(b) is premised on a showing that a defendant deliberately helped someone violate the securities laws with (1) knowledge that the violations occurred and (2) knowledge of one's own role in a scheme to carry out those violations. Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490, 495-96 (7th Cir.1986); Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1010 (11th Cir.1985). Perry has failed to allege any direct security violations by anyone. This deficiency makes it difficult to find that Kodak had knowledge that a violation occurred, much less that it had knowledge of its role in a scheme to carry out such violation.
 
 
 47
 A second possibility for aiding and abetting liability would be if Kodak remained silent in the face of security violations of which it knew. Aiding and abetting liability based on a failure to disclose knowledge of a primary securities violation is only actionable when the defendant has a duty to disclose stemming from a fiduciary relationship outside the securities laws. Schlifke v. Seafirst Corp., 866 F.2d 935, 948 (7th Cir.1989); Barker, 797 F.2d at 496. Perry has completely failed to allege any facts that would indicate that Kodak had any duty to speak concerning any possible securities violations of which it was aware. No facts have been alleged which would indicate a fiduciary relationship between Kodak and Perry. Perry has failed to indicate any basis on which Kodak could be found liable on an aiding and abetting claim. Therefore, Perry's aiding and abetting claim against Kodak must be dismissed.
 
 C. The Section 10(b) Insider Trading Claim
 
 48
 Perry claims that Kodak's sales of ICN stock and Viratek stock constitute illegal insider trading in violation of Section 10(b), because Kodak, as either an "insider" or "tippee," must have known material, non-public information regarding ICN, Viratek or ribavirin. No cause of action arises under section 10(b) or rule 10b-5 simply because an insider has inside information and fails to disclose it. The duty arises only where there is a breach of the rule that an insider must "disclose or abstain" from trading. Laventhall v. General Dynamics Corp., 704 F.2d 407, 412 (8th Cir.), cert. denied, 464 U.S. 846 (1983); Fridrich v. Bradford, 542 F.2d 307, 318 (6th Cir.1976), cert. denied, 429 U.S. 1053 (1977). The "abstain or disclose" rule was developed in SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir.1968), cert. denied, 394 U.S. 976 (1969).
 
 
 49
 The "abstain or disclose" rule holds that "anyone in possession of material inside information must either disclose it to the investing public or, if he is disabled from disclosing it ..., or he chooses not to do so, must abstain from trading in or recommending the securities concerned while such inside information remains disclosed." Id. at 848. The justification of the rule is that if the insider trades on the basis of the inside information he may profit at the expense of outside investors who are disadvantaged in the same or similar transaction by lack of inside information. "Any duty of disclosure is owed only to those investors trading contemporaneously with the insider; non-contemporaneous traders do not require the protection of the disclose or abstain rule because they do not suffer the disadvantage of trading with someone who has superior access to information." Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 94-95 (2nd Cir.1981).
 
 
 50
 In this situation, Kodak purchased its shares of ICN and Viratek in July, 1984. Perry did not make his first purchase of these stocks until July, 1986. All of his ICN purchases were made by the end of February, 1987 and his last Viratek purchase was made on March 23, 1987. Kodak sold its ICN stock from April 1 through April 9, 1987. On April 9, 1987, Perry's broker sold 4,500 shares of Perry's ICN stock. The balance of Perry's Viratek and ICN stock was sold on April 15, 1987. Kodak sold all of its Viratek stock in May and June of 1987. The only contemporaneous trading between Kodak and Perry involved the sales of ICN stock on April 9, 1987. Perry could not have suffered a disadvantage because of the alleged inside information since it made the same transaction as Kodak. Perry could only have been damaged from the withholding of any inside information if he had been on the opposite side of the transaction.
 
 
 51
 The "disclose or abstain" rule is intended to prevent one party from using its knowledge to gain an advantage over others trading in the same market at the same time. This Court does not believe that one party has gained an advantage over another party making the same transaction in the same market at the same time just because the first party has inside information concerning the transaction. Kodak only owes a duty to investors trading contemporaneously with it. Perry cannot show that it was damaged by the use of any alleged inside information by Kodak in any contemporaneous tradings with Kodak. Therefore, Perry's Section 10(b) insider trading claim must be dismissed.
 
 D. The Section 9 Price Manipulation Claim
 
 52
 Perry's last federal claim is that Kodak allegedly violated Section 9 of the 1934 Act, because its March 24 press release, in tandem with ICN's press releases, gave the false impression of actual or apparent securities transactions and were designed to raise the prices of ICN and Viratek stock. Perry claims that this conduct violated Section 9(a)(2) by giving a false impression of trading, and Section 9(a)(4) because it involved false statements.
 
 
 53
 Regarding Perry's trades in Viratek stock, these transactions are clearly beyond the scope of Section 9. Viratek is traded in the over-the-counter market. Section 9 is expressly limited to securities traded on one of the national stock exchanges. 15 U.S.C. § 78i(a). Perry's Section 9 claim involving Viratek stock fails completely and must be dismissed.
 
 
 54
 The situation is different with ICN stock since it is traded on a national stock exchange. The elements of a private action under Section 9 are very similar to those for Section 10(b) actions. In order to show a violation of Section 9(a) and recover damages under Section 9(e), a private plaintiff must plead and prove that:
 
 
 55
 (1) a series of transactions in a security created actual or apparent trading in that security or raised or depressed the market price of that security;
 
 
 56
 (2) the transactions were carried out with scienter;
 
 
 57
 (3) for the purpose of inducing the security's sale or purchase by others;
 
 
 58
 (4) were relied on by the plaintiff; and
 
 
 59
 (5) affected plaintiff's purchase or selling price.
 
 
 60
 Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1164 (5th Cir.1982), vacated on other grounds, 460 U.S. 1007 (1983). Perry's Section 9 claim suffers from the same causation and reliance problems that required dismissal of his Section 10(b) claims. Perry has not alleged any actual reliance on a manipulated market price. As a result, his Section 9 claim must be dismissed.
 
 II. Indiana Blue Sky Claim
 
 61
 For Count II of his Amended Complaint, Perry incorporates precisely the same allegations that underlie his Section 10(b) claims. Perry claims that these allegations demonstrate that Kodak violated Section 23-2-1-12 of the Indiana Securities Act and that he is entitled to rescission or recovery of the consideration he paid for ICN or Viratek stock under Section 23-2-1-19. Violations of Section 23-2-1-12 carry the same reliance, causation and duty to disclose requirements as its federal counterpart, Rule 10b-5. Thus Perry's claim cannot satisfy these elements for the reasons previously discussed.
 
 
 62
 In addition, the Indiana Act expressly limits a defendant's liability for any securities transaction that violates Section 23-2-1-12 "to any other party to the transaction." Ind.Code § 23-2-1-19(a) and (b). Kodak did not buy from or sell to Perry any of the stock on which he bases his claim. Since Perry has alleged no securities transactions in which Kodak and Perry both participated, Perry has no claim for relief under the Indiana Securities Act. Therefore, for each of these reasons, Perry's Indiana Blue Sky claim must be dismissed.
 
 III. Count III: Common Law Fraud Claim
 
 63
 Count III of Perry's Amended Complaint alleges that Kodak's statement in its March 24, 1987 press release constitutes common law fraud under Indiana law. This is the exact same fraud claim that the Court dismissed in its order of July 27, 1989. The Court held that this sort of generalized representation is not actionable in Indiana because Indiana law requires a misrepresentation of an actual past or present fact, and expressions of opinion and announcements of future intention are not enough. The Court can find no basis in Perry's Amended Complaint which would convince the Court that its prior dismissal of the common law fraud was incorrect. Thus, Count III of Perry's Amended Complaint must be dismissed.
 
 IV. Conclusion
 
 64
 For the reasons previously set forth, the Court hereby ORDERS that this action be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.
 
 
 65
 /S/LARRY J. McKINNEY, JUDGE
 
 United States District Court
 Southern District of Indiana
 Distribution to:
 Gordon Dempsey
 SUTHERLIN & DEMPSEY
 2855 One American Square
 Box 82050
 Indianapolis, Indiana 46282
 James A. McDermott
 BARNES & THORNBURG
 1313 Merchants Bank Building
 11 South Meridian Street
 Indianapolis, Indiana 46204
 
 
 [1]
 In ruling on a 12(b)(6) motion, this Court must accept the well-pleaded allegations of the complaint as true, and must view these allegations in the light most favorable to the plaintiff. Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir.1987)